A99A2010, A99A2011. GEORGIA LOTTERY CORPORATION
v. SUMNER; and vice versa.
(529 SE2d 925)

BARNES, Judge.

The Georgia Lottery Corporation ("GLC") and Darryl Sumner each appeal the trial court's denial of their motions for summary judgment regarding payment of winnings on a lottery ticket. Sumner contends that he holds a winning ticket; the GLC contends he does not. For the reasons that follow, we affirm the denial of summary judgment to Sumner and reverse the denial of summary judgment to GLC.

Sumner bought a lottery ticket for the instant game "Nifty 50s." On the front of the ticket were the following words:

WIN UP TO $50 A DAY FOR 5 YEARS!
Match either of the lucky numbers to any of
your numbers, win prize underneath it.

> Get a $$, double prize underneath it.
> Get "[symbol,]" win $50 a day for 5 years.

The symbol on the card was a black circle with a white center containing a smaller black circle in its middle.

Sumner scratched the latex off the two lucky number boxes and the ten play boxes and uncovered a mark that looked similar to the winning symbol, except that it was red. Below the red mark was written:

SIX
$4
FORDOL

Believing he had won $50 a day for five years, Sumner presented his lottery ticket to a GLC retailer, but the ticket did not pass a computer-based validation test. Sumner then went to the GLC's district office in Macon, where a clerk again ran the card through a validation machine and told him it was not a winner. He submitted a claim form and subsequently received a letter from GLC's senior vice president and general counsel notifying him that the Nifty 50s game had been discontinued because some of the tickets contained a printing error. His ticket had the printing error on it and did not have the requisite caption, which would have been printed below the symbol and would have read:

RCRD
5 YRS
$50/DAY

Additionally, the ticket did not pass the validation and security tests, and for these reasons it was not a winner, the GLC official explained.

Sumner sued the GLC for breach of contract. The GLC answered, denying that Sumner held a winning ticket. Both parties moved for summary judgment, and the trial court denied both motions.

1. The ticket itself states that all lottery transactions are subject to state law. The GLC is prohibited by statute from paying prizes on tickets that are produced in error and do not pass its validation and security tests. OCGA § 50-27-24 (c) (2) provides:

> No prize shall be paid arising from claimed tickets that are stolen, counterfeit, altered, fraudulent, unissued, produced or issued in error, unreadable, not received, or not recorded by the corporation within applicable deadlines; lacking in captions that conform and agree with the play symbols as appropriate to the particular lottery game involved; or not in compliance with such additional specific regulations and

public or confidential validation and security tests of the corporation appropriate to the particular lottery game involved.

The evidence in the record shows clearly that the red circle on Sumner's ticket that resembles the winning symbol was a stray printing mark, known in the trade as a "hickey." According to the director of manufacturing for Scientific Games International, the company that prints GLC's lottery tickets, hickeys occur when a stray piece of material gets on the printing plate and prevents ink from adhering to the spot on the ticket beneath the stray material.

2. Sumner responds that, notwithstanding the statutory limitation on payment for tickets produced in error, the legislature has also provided a means for allowing the GLC to pay prize winnings when a court orders it to do so. The legislature placed restrictions in the Code section as directions to the GLC, but not as binding law on the courts, he argues. Therefore, a court can decide whether Sumner is entitled to prize winnings based on contract law.

According to Sumner, the section that gives the court discretion to order the GLC to pay prize winnings regardless of any other restriction in the Code is OCGA § 50-27-24 (c) (1), the last sentence of which provides: "Notwithstanding any other provisions of this Code section, any person, pursuant to an appropriate judicial order, shall be paid the prize to which a winner is entitled." Because the language quoted above does not specify that it applies only to the subsection that contains it, Sumner argues, the legislature intended for the court "to construe the contract notwithstanding the provisions of the Code section."

Faced with an arguably ambiguous legislative enactment, we must try to determine the legislative intent, and "[l]anguage in one part of the statute must be construed in the light of the legislative intent as found in the statute as a whole." (Citations and punctuation omitted.) *Alford v. Pub. Svc. Comm.*, 262 Ga. 386, 387 (1) (a) (418 SE2d 13) (1992). We give due weight and meaning to all of the words of the statute, and we are "not authorized to disregard any of the words of the statute in question unless the failure to do so would lead to an absurdity manifestly not intended by the legislature." (Citation omitted.) *Boyles v. Steine*, 224 Ga. 392, 395 (162 SE2d 324) (1968); OCGA § 1-3-1 (a). A construction that upholds the statute as a whole is preferable. *Exum v. City of Valdosta*, 246 Ga. 169, 170 (1) (269 SE2d 441) (1980).

The Georgia Lottery for Education Act, OCGA § 50-27-1 et seq., was enacted "to support improvements and enhancements for educational purposes and programs." OCGA § 50-27-2 (1). The legislature further declared that "lottery games shall be operated and managed in a manner which provides continuing entertainment to the public,

maximizes revenues, and ensures that the lottery is operated with integrity and dignity." OCGA § 50-27-2 (3).

If we were to construe the sentence "any person, pursuant to an appropriate judicial order, shall be paid the prize to which a winner is entitled" as allowing us to ignore the rest of the lottery statute, as Sumner suggests, the rest of the statute would mean nothing. Further, according to the record, more than thirty other Nifty 50s players are seeking to collect $50 per day for five years, or $91,250 each, because their tickets have a printing error. Such unanticipated payments on tickets produced in error would severely reduce GLC revenues and funds for educational programs, an outcome the legislature clearly did not intend.[1]

The sentence is more logically construed to apply to the subsection that contains it, which addresses the assignability of prizes and the payment of remaining prizes to a deceased's estate or trust. The complete text of OCGA § 50-27-24 (c) (1) provides:

> (c) The corporation shall adopt regulations, policies, and procedures to establish a system of verifying the validity of tickets or shares claimed to win prizes and to effect payment of such prizes, except that: (1) No prize, any portion of a prize, or any right of any person to a prize awarded shall be assignable. Any prize or any portion of a prize remaining unpaid at the death of a prize winner shall be paid to the estate of the deceased prize winner or to the trustee of a trust established by the deceased prize winner as settlor if a copy of the trust document or instrument has been filed with the corporation along with a notarized letter of direction from the settlor and no written notice of revocation has been received by the corporation prior to the settlor's death. Following a settlor's death and prior to any payment to such a successor trustee, the corporation shall obtain from the trustee a written agreement to indemnify and hold the corporation harmless with respect to any claims that may be asserted against the corporation arising from payment to or through the trust. *Notwithstanding any other provisions of this Code section, any person, pursuant to an appropriate judicial order, shall be paid the prize to which a winner is entitled.*

(Emphasis supplied.)

---

[1] Other states have addressed this precise issue. See *Ruggiero v. State Lottery Comm.*, 21 Mass. App. Ct. 686 (489 NE2d 1022) (1986), upholding the Massachusetts State Lottery Commission's decision denying a player's claim for $100,000 based on a misprinted lottery ticket. The court held that the rules printed on the ticket stated that a defective ticket such as the one at issue was void.

Applying OCGA § 50-27-24 (c) (2) to this case, we conclude that the law prohibits the GLC from paying Sumner $50 per day for five years based on a printing error that happened to resemble the winning symbol.

3. However, even if we were to consider the ticket pursuant to contract law, it is still invalid. Aside from statutory considerations, the issue of whether a lottery player is entitled to prize winnings under the terms printed on the ticket is governed by the principles of contract law. The GLC offers the chance to win a prize, and the player accepts the offer by buying the ticket. While no Georgia case has yet considered this issue, numerous other state courts have concluded that contract law governs. See, e.g., *Haynes v. Dept. of the Lottery*, 630 S2d 1177, 1179 (Fla. App. 1994); *Valente v. Rhode Island Lottery Comm.*, 544 A2d 586, 589 (R.I. 1988).

The terms of the contract are printed on the ticket and are incorporated by reference. The back of the ticket includes the following language:

> *All tickets, transactions, and winners are subject to Lottery Rules and applicable State Law.* . . . Tickets are void if they fail to meet requirements of game rules or are irregular in any manner. Liability for void ticket is limited to replacement of ticket or refund of retail sales price. Do not accept ticket if it appears altered in any way.

(Emphasis supplied.)

The GLC contends that Sumner's ticket is void, among other reasons, because it is "irregular." Sumner concedes that GLC's printer testified on deposition that the red symbol appeared on his ticket because of a printing error but contends that the only requirement for winning was that a doughnut-shaped symbol appear on the card. Sumner's ticket has that symbol, and regardless of how it came to be there, he argues, under the contractual terms of the ticket he won $50 a day for five years.

"The construction of a contract is a matter of law for the court under OCGA § 13-2-1, particularly where, as here, the terms are unambiguous." *Castellana v. Conyers Toyota*, 200 Ga. App. 161, 165 (2) (407 SE2d 64) (1991). Sumner's argument that all he needed was a winning symbol to collect the prize money ignores the contractual language on the back of the ticket, which provides that "[t]ickets are void if they . . . are irregular in any manner." The undisputed evidence establishes that the ticket is "irregular." Accordingly, under the terms of the contract, Sumner did not hold a winning ticket. The trial court erred in denying summary judgment to the GLC and correctly denied summary judgment to Sumner.

4. Our decisions in Divisions 1, 2 and 3 render moot the GLC's remaining arguments.

*Judgment affirmed in Case No. A99A2011. Judgment reversed in Case No. A99A2010. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED MARCH 14, 2000 — 

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Shereen M. Walls, Assistant Attorney General, Troutman Sanders, Norman L. Underwood, James K. Quillian, Julia M. Gonzalez, Samantha J. Kavanaugh, for appellant.*

*Gregory, Christy & Maniklal, Hardy Gregory, Jr., Gary C. Christy, James G. Williams, for appellee.*