**FIRST DIVISION
BARNES, P.J.,
MCMILLIAN and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 14, 2019**

# In the Court of Appeals of Georgia

A18A2143. GEORGIA LOTTERY CORPORATION v. PATEL.

COOMER, Judge.

Ramilaben Patel sued the Georgia Lottery Corporation (the "GLC") for breach of contract after it denied her claim for a lottery prize. The GLC filed a motion to dismiss, which the trial court denied. The GLC appeals, arguing that the trial court erred in denying its motion to dismiss because a Georgia lottery ticket is not an express, written, signed contract and therefore Patel's suit is barred by sovereign immunity. Whether a Georgia lottery ticket constitutes a written contract which waives the GLC's sovereign immunity is an issue of first impression. For the following reasons, we affirm the trial court's denial of the GLC's motion to dismiss.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law." *Driscoll v. Bd. of Regents of Univ. System of Ga.*, 326 Ga. App. 315, 315 (757 SE2d 138) (2014).

In 2016, Patel presented a scratched off lottery ticket to the GLC, claiming a $5,000,000 prize. On its face, the ticket contained the words "Georgia Lottery," provided a ticket price of "$20," and stated "Match any of YOUR NUMBERS to any of the eight SERIAL NUMBERS, win prize shown for that number. Get JUMBO and win 5 times that prize. Get a "[symbol omitted]" symbol, instantly win ALL 20 PRIZES shown!" On the back, the ticket provided as follows:

- Ticket price is $20. Overall Odds: 1:3.01. Sign ticket and claim prizes as soon as possible, but no later than 90 days after end of game. To claim prizes up to and including $600, present the ticket to any Georgia Lottery retailer or office. To claim prizes over $600, present the ticket to any Georgia Lottery office, along with a valid government issued photo ID and social security card. Prizes can also be claimed by mailing signed ticket to: Georgia Lottery, P.O. Box 56966, Atlanta, GA 30343. Date of claim is date of receipt by GLC.
- All tickets, transactions and winners are subject to Lottery Rules and applicable State Law. Prizes, including top prizes, are subject to availability at time of ticket purchase. Ticket purchasers must be at least 18 years old. Tickets are void if they fail to meet

2

requirements of game rules or are altered or defective in any manner. Liability for void ticket is limited to replacement of ticket or refund of retail sales price.

- Players winning a free ticket in this game are entitled to a free ticket valued at $20.

- For more information, visit our website at www.galottery.com or call 1-800-GA-LUCKY (1-800-425-8259).

The GLC denied Patel's prize claim. When the GLC informed Patel that it was denying her claim, Patel filed a complaint against the GLC, asserting that the GLC breached its contractual obligation by failing to pay the $5,000,000 prize. The GLC filed a motion to dismiss on the grounds of sovereign immunity. After a hearing, the trial court denied the GLC's motion to dismiss, finding that the lottery ticket was a contract between the GLC and Patel, which resulted in a waiver of sovereign immunity. The trial court issued a certificate of immediate review and the GLC timely filed an application for interlocutory review, which we granted. This appeal followed, in which the GLC asserts as its sole enumeration of error that Patel's suit is barred by sovereign immunity. We disagree.

(a) The GLC argues that its defense of sovereign immunity was not waived because a lottery ticket is not an express, written, signed contract. "The doctrine of

3

sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Watts v. City of Dillard*, 294 Ga. App. 861, 862 (1) (670 SE2d 442) (2008) (punctuation omitted). Sovereign immunity applies to the GLC. In *Kyle v. Ga. Lottery Corp.*, 290 Ga. 87, 88 (1) (718 SE2d 801) (2011), the Supreme Court held that the GLC was an instrumentality of the State and was therefore protected from suit from sovereign immunity. The Georgia Constitution, however, waives sovereign immunity in breach-of-contract claims based upon written contracts. *Layer v. Barrow County*, 297 Ga. 871, 871 (1) (778 SE2d 156) (2015); *see* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). The burden of demonstrating a waiver of sovereign immunity rests with the person asserting it. *See Watts*, 294 Ga. App. at 863 (1). The GLC argues that Patel did not meet her burden because she failed to show that she has an express, written, signed contract with the GLC.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. "An offer and an acceptance are essential prerequisites to the creation of every kind of contract. Thus, the law requires that the parties consent to the formation of a

4

contract. Until each has assented to all the terms, there is no binding contract[.]" *Southeast Grading, Inc. v. City of Atlanta*, 172 Ga. App. 798, 800 (2) (324 SE2d 776) (1984) (citations and punctuation omitted). "Assent to the terms of a contract may be given other than by signatures." *Cochran v. Eason*, 227 Ga. 316, 318 (1) (180 SE2d 702) (1971).

In Georgia, there has been no express determination made that lottery tickets constitute written contracts. The GLC argues that the trial court erred in relying on dicta in *Talley v. Mathis*, 265 Ga. 179, 179 (1) (453 SE2d 704) (1995) and *Ga. Lottery Corp. v. Sumner*, 242 Ga. App. 758, 762 (3) (529 SE2d 925) (2000) in finding that a lottery ticket is a contract between the GLC and the holder of the ticket. In *Talley*, our Supreme Court, in considering the validity of an agreement to split proceeds of a lottery ticket purchased in Kentucky, referred to the lottery ticket as a "gambling contract" between the State of Kentucky and the holder of the winning lottery ticket, the enforceability of which was recognized "through [that state's] agreement to pay the lottery proceeds to appellees in their capacities as holders of the winning ticket." In *Sumner*, which was decided on other grounds, we stated that "whether a lottery player is entitled to prize winnings under the terms printed on the ticket is governed by the principles of contract law. The GLC offers the chance to win

5

a prize, and the player accepts the offer by buying the ticket." 242 Ga. App. at 762 (3). Moreover, we acknowledged that the terms on the back of the ticket were indeed contractual terms. *Id.* The GLC maintains that a lottery ticket could not be a contract without being signed, but *Sumner* can be read to reject this theory.

Although *Sumner* is not binding precedent on the issue of whether a Georgia lottery ticket is a contract, our analysis in that case was correct. The GLC issues written lottery tickets. By buying a lottery ticket, a lottery player accepts the GLC's offer of a chance to win a prize under the terms printed on the ticket. By issuing and selling the ticket, the GLC assents to the terms of the contract. Thus, the elements of offer, acceptance, and assent of both parties to the terms of the contract are present. *See* OCGA § 13-3-1; *see also Southeast Grading, Inc.*, 172 Ga. App. at 800 (2). As discussed below, the GLC has the ability to contract as required by OCGA § 13-3-1. The consideration for the contract, which is required by OCGA § 13-3-1, is the purchase price of the ticket. The terms of the contract between the holder of the ticket and the GLC are written on the ticket, including the ticket price, how to win a prize, and the process for claiming prizes. Thus, the subject matter of the contract, an essential element of a contract under OCGA § 13-3-1, is stated on the ticket. Consequently, a Georgia lottery ticket is a valid contract under Georgia law.

Furthermore, a Georgia lottery ticket is an express written contract because the intention of the parties and the terms of the agreement are expressed in writing on the lottery ticket. *See Classic Restorations, Inc. v. Bean*, 155 Ga. App. 694, 699 (5) (a) (272 SE2d 557) (1980). Thus, the trial court did not err in denying the GLC's motion to dismiss on the grounds that sovereign immunity had been waived.

The GLC cites several cases for the proposition that "a contract with the State must be express, in writing, and signed by the parties in order to waive sovereign immunity." However, all of these cases are distinguishable from the instant case. In *Kyle*, 290 Ga. 87, a trademark infringement case, the Court did not address whether a contract with the State needed to be express, in writing, and signed by the parties in order to waive sovereign immunity. Rather, *Kyle* was the first case to determine that, as stated earlier, the GLC is entitled to sovereign immunity. 290 Ga. at 88 (1). In *Ga. Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 686 (1) (a) (722 SE2d 403) (2012), the proposed agreement at issue expressly provided that it would not be effective unless executed by both parties. Similarly, in *Georgia Dept. of Labor v. RTT Associates, Inc.*, 299 Ga. 78, 79 (786 SE2d 840) (2016), the contract at issue specified that amendments must be in writing and fully executed by both

parties. In contrast, the lottery ticket at issue in this case contains no requirement that the GLC sign the ticket to render it valid.

The GLC cites *Bd. of Regents of the Univ. System of Ga. v. Ruff*, 315 Ga. App. 452, 456-457 (2) (726 SE2d 451) (2012), *overruled on other grounds*, *Rivera v. Washington,* 298 Ga. 770 (784 SE2d 775) (2016), and *Ga. Dept. of Community Health v. Neal*, 334 Ga. App. 851, 855-856 (1) (780 SE2d 475) (2015), *overruled on other grounds*, *Rivera,* 298 Ga. 770, for the proposition that Patel cannot establish a contract was created by multiple, contemporaneous agreements between the parties, but Patel does not raise this argument. Patel contends that her lottery ticket itself is a valid, binding, written contract.

Similarly, in *Wilson v. Bd. of Regents of Univ. System of Ga.*, 262 Ga. 413, 414 (2) (419 SE2d 916) (1992), the Supreme Court held that a "consent form and other hospital records lacking the essential terms of a contract are not a written contract to which the waiver of sovereign immunity applies." In contrast, the lottery ticket at issue contains the essential terms of the contract between the GLC and Patel.

(b) The GLC also contends that it does not have the statutory authority to enter into a written contract with Patel. One of the essential elements of a contract is the ability of the parties to contract. *See Watts*, 294 Ga. App. at 863 (1); *see also* OCGA

8

§ 13-3-1. The GLC argues that while the Georgia Lottery for Education Act grants the GLC the power to enter into a number of types of contracts for specific purposes, including contracts with vendors and retailers and with other states, there is no mention of the power to contract with purchasers or holders of lottery tickets. However, OCGA § 50-27-9 (a) (15) authorizes the GLC to "enter into contracts of any and all types on such terms and conditions as the corporation may determine." Thus, the GLC had the ability to enter into a contract with Patel.

(c) The GLC argues that the General Assembly did not define lottery tickets as contracts, and that its definition of a lottery ticket as "any tangible evidence issued by the lottery to provide participation in a lottery game" in OCGA § 50-27-3 (24) undercuts the trial court's conclusion that lottery tickets are contracts. The GLC contends that use of the word "contract" in OCGA § 50-27-13 (14), which defines the term "major procurement contract," in OCGA § 50-17-3 (22), which defines a retailer as "a person who sells lottery tickets . . . pursuant to a contract," and in OCGA § 50-17-3 (25), which defines a vendor as "a person who provides . . . goods or services to the corporation pursuant to a major procurement contract," but not in OCGA § 50-17-3 (24), which defines a lottery ticket, indicates that the General Assembly did not consider a lottery ticket to be a contract. However, the "construction, interpretation,

9

and legal effect of a contract is a question for the court to decide." *Georgia Kraft Co. v. Rhodes*, 257 Ga. 469, 472 (2) (360 SE2d 595) (1987). Thus, the General Assembly's definition of a lottery ticket does not preclude us from determining that the lottery ticket at issue in this case constitutes a valid contract under Georgia law.

As discussed above, the GLC is capable of entering into contracts and a lottery ticket is an express written contract. Consequently, Patel's breach of contract claim is not barred by sovereign immunity and the trial court did not err in denying the GLC's motion to dismiss.

*Judgment affirmed. Barnes, P.J., concurs. McMillian, J., dissents.**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

A18A2143.  GEORGIA LOTTERY CORPORATION v. PATEL.

McMILLIAN, Judge, dissenting.

Because I believe that under governing Supreme Court precedent, the scratch off lottery ticket that Patel presented is at most evidence of an implied contract, and an express written contract is required to waive GLC's sovereign immunity, I must respectfully dissent.

The Georgia Constitution provides:

> The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). Recently, in *Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 83 (2) (786 SE2d 840) (2016), our Supreme Court explained

the relationship between common law rules of contract and what constitutes a written contract sufficient to waive sovereign immunity:

> General rules of contract law that might otherwise support a claim for breach of contract damages between private parties . . . will not support a claim against the state or one of its agencies if the contract is not in writing so as to trigger the waiver of sovereign immunity.

Id. at 82 (2). Thus, a party may not recover for breach of contract against the State based on an implied contract, on a theory of quantum meruit, or by the parties' course of conduct even if a document exists supplying the material terms of the alleged contract. Id. at 82-83 (2).

Particularly pertinent, the Supreme Court relied favorably on *Bd. of Regents of Univ. Sys. of Ga. v. Tyson*, 261 Ga. 368, 369 (1) (404 SE2d 557) (1991), finding that "even if a contract with a state agency is formed by the parties' conduct, if it is not a written contract the state's sovereign immunity is not waived" and that a breach of contract action against the State cannot be based on multiple unsigned documents that do not establish the necessary terms of a contract. *RTT Assoc.*, 299 Ga. at 82 (2). See also *Wilson v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. 413, 414 (2) (419 SE2d 916) (1992) (finding the Board of Regents did not enter into a written contract based on the consent form and ambulatory surgery patient agreement that plaintiff signed

2

before her operation); *Browning v. Rabun County Bd. of Commissioners*, 347 Ga. App. 719, 722-23 (820 SE2d 737) (2018) (summary of benefits was not a written contract between the parties where it was not signed by either party and does not show the assent of the parties to the contract); *Bd. of Regents of Univ. Sys. of Ga. v. Ruff*, 315 Ga. App. 452, 457 (2) (726 SE2d 451) (2012) (where none of the writings produced by the plaintiff were signed by a representative of the Board of Regents, plaintiff was unable to establish a written contract), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778, n.7 (784 SE2d 775) (2016).

The Supreme Court's analysis in these cases shows that the Court means what it says when it has cautioned that "[t]he doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity must be strictly followed." (Citation and punctuation omitted.) *RTT Assoc.,* 299 Ga. at 83 (2). Here, our legislature has defined a lottery ticket as "any tangible evidence issued by the lottery to provide participation in a lottery game," OCGA § 50-27-3 (24), so it is entirely consistent for the rules of the game to be printed on the ticket.[1] Although

---

[1] Although it is true that under the common law, the "construction, interpretation and legal effect of a contract is a question for the court to decide," *Ga. Kraft Co. v. Rhodes*, 257 Ga. 469, 472 (2) (360 SE2d 595) (1987), when considering whether sovereign immunity has been waived, the Supreme Court has held that "[o]nly the General Assembly, and not the courts, has authority to waive sovereign

3

these rules may also be deemed contractual terms, that does not mean that it is a written contract for sovereign immunity purposes as the ticket is only evidence of Patel's participation in the lottery and thus is at most evidence of an implied contract. The lottery ticket is not signed by a representative of the GLC, nor are there any other documents that Patel has pointed to that fit within how our Supreme Court has described written contracts sufficient to waive sovereign immunity. See *Layer v. Barrow County*, 297 Ga. 871, 871-72 (1) (778 SE2d 156) (2015) (sovereign immunity will bar a lawsuit for damages upon quasi-contractual theories of liability in the absence of a written contract).

Accordingly, I would find that the trial court erred in denying the GLC's motion to dismiss on grounds of sovereign immunity and reverse.[2]

---

immunity." *RTT Assoc.*, 299 Ga. at 85 (2). Thus, I find the legislature's definition of lottery ticket to be highly probative.

[2] Patel argues that if her breach of contract claims are barred by sovereign immunity, she would have no recourse, but sovereign immunity does not bar mandamus relief. See *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 (2) (b) (ii) (770 SE2d 832) (2015). For mandamus relief, a claimant must show that "(1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citation and punctuation omitted.) Id. at 800 (2) (b) (ii).