**SECOND DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0031. PATEL v. GEORGIA LOTTERY CORPORATION.

COOMER, Judge.

Ramilaben Patel sued the Georgia Lottery Corporation (the "GLC") in the State Court of Fulton County for breach of contract after it denied her claim for a $5,000,000 lottery prize. The GLC filed a motion to dismiss on the grounds that venue was improper in state court. The state court denied the GLC's motion to dismiss but transferred the case to the Superior Court of Fulton County. Patel filed a motion for summary judgment, and the GLC filed a motion to dismiss on the grounds of sovereign immunity. After a hearing, the trial court denied both Patel's motion for summary judgment and the GLC's motion to dismiss. The trial court issued a certificate of immediate review for its consolidated order and the GLC timely

filed an application for interlocutory review, which we granted. The GLC appealed.[1]

Patel cross-appeals from the superior court's order denying summary judgment and from the state court's order transferring the case to superior court, arguing that the superior court erred in denying her motion for summary judgment on the basis that genuine issues of material fact remain and in denying her claim for statutory interest. She also contends that the state court erred in transferring her case to superior court. For the following reasons, we affirm in part, reverse in part, and remand.

1. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9–11–56 (c). "[A]t the summary judgment stage, courts are required to construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences." *Smith v. Tenet HealthSystem Spalding, Inc.*, 327 Ga. App. 878, 879 (1) (761 SE2d 409) (2014) (footnote and punctuation omitted). "And because summary

---

[1] In *Georgia Lottery Corp. v. Patel*, 2019 Ga. App. LEXIS 189, 2019 WL 1198865, __ Ga. App. ___ (826 SE2d 385) (2019) (physical precedent only), we affirmed the trial court's denial of the GLC's motion to dismiss.

judgment is a matter of law, we review the issue de novo." *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 583 (1) (a) (748 SE2d 846) (2013) (citation omitted).

Viewed in the light most favorable to the GLC, the record shows that on June 28, 2016, Patel went to the GLC's office in Dalton, Georgia, and presented a winning $5,000,000 ticket. On June 30, 2016, the GLC interviewed Patel, the manager of the Neighborhood Food Mart in Dublin, Georgia, regarding the ticket. The interview was conducted through one of Patel's English-speaking friends, who was provided by Patel as her English-Gujarati interpreter. In a letter dated August 16, 2016, Joseph J. Kim, Senior Vice-President and General Counsel for the Georgia Lottery Commission, informed Patel that he had directed the GLC's Prize Validation Department to decline to pay the $5,000,000 lottery ticket which she had submitted on June 28, 2016. The reason given for the denial was that Patel's "misrepresentations regarding the facts surrounding [her] purchase of the ticket has led us to conclude that [she is] not the actual purchaser of the ticket and that [she is] actually cashing the ticket for an undisclosed third party." The letter explained that "the GLC cannot allow prize applicants to submit winning tickets on behalf of third parties to assist them to unlawfully circumvent setoffs for unpaid taxes, unpaid child support or unpaid obligations for which winnings are reduced pursuant to OCGA 50-27-50 *et seq.*"

3

After Patel filed suit for breach of contract, the GLC conducted an investigation of her $5,000,000 prize claim. The investigator in charge of Patel's claim determined that an unusually high number of Georgia lottery ticket packs were activated at the Neighborhood Food Mart in Dublin on June 12, 2016. Specifically, he determined that during a two-minute period, 34 packs containing a total of 460 lottery tickets were activated in rapid succession, including the pack containing the $5,000,000 winning lottery ticket. The investigator found that throughout the next three days, the tickets from these 34 packs were scanned at lottery terminals in Decatur, Scottsdale, Clarkston, Lilburn, Macon, and Dublin, and that over $6,500 in prizes, each with a value of $600 or less, were cashed. Surveillance video at one of the locations where the tickets were scanned and cashed showed that Patel's son, who was a part-time employee at the Neighborhood Food Mart, was the person cashing the tickets. Based on his investigation, the investigator determined that Patel's son obtained the 34 packs of activated lottery tickets, including the $5,000,000 winning ticket. At his deposition, Patel's son testified that he had never bought a whole pack of tickets at once because he does not have that much money. The GLC contends that Patel's son took the 34 packs of tickets, worth $10,200, without making the required up-front cash payment required by OCGA § 50-27-10 (2).

4

Patel contends that the $5,000,000 lottery ticket was purchased by her daughter, who then gave her the ticket as a gift at a birthday celebration dinner the day before the ticket was scratched. Patel's daughter testified at her deposition that she drove from Brunswick to Dublin on June 12, 2016, with two of her children. When they got to Dublin, she stopped at the Neighborhood Food Mart and bought seven packs of lottery tickets to give to her mother as a gift. Patel's daughter testified that she paid cash for the purchase, which totaled $2,100 and that she bought the tickets with her own money. Patel's daughter also testified that she and her mother, father, brother, and two of her children drove from Dublin to Atlanta on June 13, 2016, and that on the way to Atlanta, she gave Patel five packs of lottery tickets. When they got to Atlanta, they went to a restaurant to celebrate Patel's birthday. At the restaurant, Patel's daughter gave her two more packs of lottery tickets.

As the evidence outlined above demonstrates, fact questions remain regarding who obtained the lottery ticket at issue, whether it was paid for at the time it was obtained, and whether Patel is the lawful holder of the lottery ticket. Consequently, the trial court did not err in denying Patel's motion for summary judgment.

2. Patel contends that the trial court erred in denying her claim for statutory interest. We agree.

5

In her complaint, Patel alleged that "[b]y denying [her] claim and refusing to pay the $5,000,000.00 prize, Defendant GLC has breached its contractual obligations" and that she had "suffered damages proximately caused by Defendant GLC's breach of the agreement in the amount of $5,000,000.00, plus interest accrued from the date of Defendant GLC's initial refusal to honor the terms of the winning ticket." Also in her complaint, she specifically requested that "judgment be entered in [her] favor . . . in the amount of $5,000,000.00 . . . [and] [t]hat [she] be awarded costs of the suit, plus interest accrued on the $5,000,000.00 winning ticket[.]"

OCGA § 13-6-13, which applies to contracts, provides that "[i]n all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery." OCGA § 7-4-15 provides that "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them[.]"

On appeal, the GLC argues that Patel is not entitled to recover prejudgment interest because there is no waiver of sovereign immunity for prejudgment interest. We disagree.

"The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Watts v. City of Dillard*, 294 Ga. App. 861, 862 (1) (670 SE2d 442) (2008) (citation and punctuation omitted). Sovereign immunity applies to the GLC. In *Kyle v. Ga. Lottery Corp.*, 290 Ga. 87, 88 (1) (718 SE2d 801) (2011), the Supreme Court held that the GLC was an instrumentality of the State and was therefore protected from suit from sovereign immunity. The Georgia Constitution, however, waives sovereign immunity in breach-of-contract claims based upon written contracts. *Layer v. Barrow County*, 297 Ga. 871, 871 (1) (778 SE2d 156) (2015); *see* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). The burden of demonstrating a waiver of sovereign immunity rests with the person asserting it. *See Watts*, 294 Ga. App. at 863 (1).

The GLC contends that because there is no language in OCGA § 7-4-15 or OCGA § 13-6-13 specifically waiving sovereign immunity, an award of prejudgment interest against the GLC is not allowed as a matter of law. We have consistently rejected similar arguments. "The constitutional waiver of sovereign immunity in contract actions against the state is *not* limited to a waiver of only certain elements of recoverable compensatory damages." *Dept. of Transp. v. Fru-Con Constr. Corp.*,

7

206 Ga. App. 821, 826 (5) (426 SE2d 905) (1992). In *State Highway Dept. v. Knox-Rivers Constr. Co.*, 117 Ga. App. 453, 462 (5) (160 SE2d 641) (1968), we held that because sovereign immunity was not applicable in an action against the State Highway Department based on breach of contract,[2] sovereign immunity did not bar an award of interest under Code § 20-1408 (now OCGA § 13-6-13). In *Eastern Air Lines, Inc. v. Fulton County*, 183 Ga. App. 891, 892-893 (1) (360 SE2d 425) (1987),[3] we held that a taxpayer was entitled to recover prejudgment interest from Fulton County under OCGA § 7-4-15 in an action for a refund of wrongfully collected taxes. Similarly, in *Waters v. Glynn County*, 237 Ga. App. 438, 440 (3) (514 SE2d 680) (1999), the county argued that the plaintiff's claim for attorney fees was "barred by sovereign immunity because there has been no specific statutory waiver allowing the recovery of attorney fees against a county." We held that "no separate statutory

---

[2] In *National Distributing Co., Inc. v. Dept. of Transp.*, 157 Ga. App. 789, 792-793 (3) (278 SE2d 648) (1981), we implicitly overruled *Knox-Rivers* insofar as it was predicated upon a theory of implied consent by the State to suits ex contractu. *Knox-Rivers* and *National Distributing Co.* were both decided before the Georgia Constitution was amended to waive sovereign immunity in breach of contract cases.

[3] The Georgia Tort Claims Act, enacted after *Eastern Air Lines* was decided, expressly prohibited awards of prejudgment interest against the State in tort actions. *See Georgia Dept. of Corrections v. Couch*, 295 Ga. 469, 480 (2) (b) (759 SE2d 804) (2014).

8

waiver of sovereign immunity is required to allow the recovery of such damages against a governmental entity." *Id.* We held in *Georgia Lottery Corp. v. Patel*, 2019 Ga. App. LEXIS 189, 2019 WL 1198865, __ Ga. App. ___ (826 SE2d 385) (2019) (physical precedent only) that sovereign immunity did not bar Patel's breach of contract claim against the GLC. Consequently, we hold that sovereign immunity does not bar the award of prejudgment interest in her breach of contract action.

OCGA § 13-6-13 "is applicable to cases involving unliquidated damages." *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298 (3) (427 SE2d 789) (1993). Under OCGA § 7-4-15, "prejudgment interest – which flows automatically from a liquidated demand – is to be awarded upon a judgment for a liquidated amount. Thus, as long as there is a demand for prejudgment interest prior to the entry of final judgment, a trial court should award it. A demand is liquidated when the sum owed is fixed and certain, meaning there is no bona fide controversy over the amount." *Estate of Callaway v. Garner*, 297 Ga. 52, 54 (2) (772 SE2d 668) (2015) (citations and punctuation omitted). In this case, the amount due on the lottery ticket was fixed. Therefore, the damages sought were liquidated. *See id.* Consequently, OCGA § 7-4-15 "is the statute applicable to the award of prejudgment interest in the case at bar. The award of prejudgment interest pursuant to OCGA § 7-4-15 is

9

mandatory rather than discretionary, and is awarded by a judge as a matter of law." *Consulting Constr. Corp.*, 207 Ga. App. at 298 (3).

The trial court found that Patel was not entitled to recover interest pursuant to OCGA § 13-6-13 on the basis that she is seeking specific performance by demanding that the GLC pay the lottery ticket at issue. "[S]pecific performance is an equitable remedy that generally is appropriate only where an award of damages would be insufficient to compensate the injured party for the other's breach." *Estate of Callaway v. Garner*, 297 Ga. 52, 53 (1) (772 SE2d 668) (2015) (citations omitted). However, Patel specifically demanded a monetary judgment against the GLC in the principal amount of her ticket, plus interest, in her breach of contract action. Thus, the trial court erred in denying Patel's motion for summary judgment with respect to her claim to recover statutory interest on the basis that Patel was seeking specific performance. Even if the trial court were correct that Patel's claim was for specific performance, prejudgment interest is authorized under OCGA § 7-4-15 if demand for interest is made prior to the entry of a final judgment. *Id*. at 54 (2). Whether Patel made a sufficient demand for prejudgment interest and is otherwise entitled to recover under OCGA § 7-4-15 are questions for the trial court to resolve on remand.

10

3. Patel contends that the State Court of Fulton County erred in transferring this case to the Superior Court of Fulton County. Patel argues that the superior court did not have exclusive jurisdiction over this case, and that venue was also appropriate in the state court, because OCGA § 50-27-4 provides that venue for the GLC "shall be in Fulton County" and does not make any distinction between state court and superior court.[4] Patel requests, in the event we determine that additional proceedings are necessary, that the case be transferred back to the State Court of Fulton County where it was originally filed.

---

[4] Davis and Shulman's Georgia Practice and Procedure provides an explanation of the conceptual difference between venue and jurisdiction in civil cases:

> The principal point to be remembered about venue is that it denotes a place, that is to say, a geographical division actually created by statute or otherwise, and having physical boundaries on the surface of the earth. Since we quite properly say that when a matter is not subject to a court because of the venue, the court does not have jurisdiction, some confusion between the terms has inevitably resulted. This confusion can best be avoided by remembering that in its essence, the term "jurisdiction" means power and authority, and "venue" means a geographical location. It is said, therefore, for the purpose of simplicity, that jurisdiction is power, and venue is place.

Richard C. Ruskell, § 5:1, (2018-2019 ed.).

Conversely, the GLC argues that the state court properly transferred the case to superior court. OCGA § 50-21-1 (a) provides that "sovereign immunity is waived as to any action ex contractu for the breach of any written contract . . . entered into by the state, departments and agencies of the state, and state authorities." OCGA § 50-21-1 (b) provides that "[v]enue with respect to any such action shall be proper in the Superior Court of Fulton County, Georgia. The provisions of this subsection shall be cumulative and supplemental to any other venue provisions permitted on April 12, 1982, or thereafter permitted by law." The GLC contends that OCGA § 50-21-1 (b) requires that breach of contract actions against the State be brought in the Superior Court of Fulton County. However, in *Bd. of Regents of Univ. System of Ga. v. Winter*, 331 Ga. App. 528, 531-532 (1) (771 SE2d 201) (2015), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016), we considered this argument and rejected it.

> This plain language, however, only means that venue cannot be contested in the specified court. Compare OCGA § 50-21-28 (which provides, among other things, that tort actions against the state "*shall be brought in* the state or superior court of the county wherein the loss occurred") (emphasis supplied). Moreover, the plain meaning of the last sentence of subsection (b), shows that venue for such a claim is not exclusive to the Superior Court of Fulton County, but rather that venue

12

in that court "*shall be* cumulative and supplemental to" other legal venue. (Emphasis supplied.)

The GLC argues that *Winter* should be overruled. However, we need not determine whether *Winter* should be overruled to resolve the case at bar. On appeal, the burden is on the appellant to establish harm, as well as error; "error which is harmless will not be cause for reversal." *Lamb v. Javed*, 303 Ga. App. 278, 282 (2) (692 SE2d 861) (2010) (footnote omitted). Even assuming, without deciding, that the state court's transfer of this case to superior court was erroneous, Patel has shown no harm by the transfer. Consequently, she has demonstrated no basis for this Court to direct the superior court to return this case to its original forum.

*Judgment affirmed in part, reversed in part, and remanded. Barnes, P. J., concurs. McMillian, J., concur*s *in judgment only*.*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

13