**FOURTH DIVISION
BARNES, P. J.,
MCMILLIAN, P.J., and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 31, 2019**

# In the Court of Appeals of Georgia

A19A1625. GEORGIA LOTTERY CORPORATION v. VASAYA.

COOMER, Judge.

Sannah Vasaya sued the Georgia Lottery Corporation (the "GLC"), alleging that it had wrongfully refused to issue prize money to her after she won a Georgia Lottery instant game, "$7,500 a Week for Life." Vasaya moved for summary judgment on the ground that the GLC had breached its contract with her by failing to pay the award. The trial court granted Vasaya's motion for summary judgment and later awarded Vasaya attorney fees and expenses. The trial court entered its final order and judgment on December 26, 2018. The GLC appeals, arguing that the trial court erred when it found that a lottery ticket is a written contract sufficient to waive sovereign immunity; by granting Vasaya's motion for summary judgment as (a) questions of material fact exist and (b) a grant of attorney fees is a question for a jury

and cannot be made at the summary judgment stage; and by awarding prejudgment interest. For the following reasons, we affirm in part and reverse in part.

"[A]t the summary judgment stage, courts are required to construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences." *Smith v. Tenet HealthSystem Spalding, Inc.*, 327 Ga. App. 878, 879 (1) (761 SE2d 409) (2014) (footnote and punctuation omitted). Viewed in the light most favorable to the GLC, the record shows that on January 29, 2016, Vasaya presented a winning scratch-off lottery ticket, "$7,500 a Week for Life," to the GLC's Duluth District Office. The same day, the GLC sent Vasaya a letter telling her that she was "a winner of the Georgia Lottery's $7,500 a Week for Life instant game." While Vasaya was at the GLC's Duluth office on January 29, 2016, Darrin Flanagan, the GLC's Prize Validation Manager, called her from the GLC's headquarters in Atlanta to confirm that she was the bona fide purchaser of the ticket. At a later deposition, Flanagan testified that he became concerned that Vasaya was not the purchaser of the ticket because of the time it took her to answer some of his questions. Flanagan testified that she would repeat his question out loud and get a response back, and that she gave him a round-about answer to his question about whether any of her family members own a retail location

2

that sells lottery tickets. Flanagan testified that a rightful owner would know immediately when and where they purchased the ticket. He also testified that after talking to Vasaya, he found out her father owns a retail location that sells lottery tickets.

The GLC then conducted an investigation of Vasaya's prize claim. The investigator in charge of Vasaya's claim, Tim Frost, contacted the owner of the store where the ticket at issue was sold. In a memorandum dated February 25, 2016, Frost stated that the store owner told him that his wife, Malika Lalani, had been working at the store the morning of January 29, 2016, when the ticket was purchased. The store owner also told Frost that his landlord's wife and daughter had been in the store when the ticket was purchased. The next morning, Frost interviewed Lalani. Lalani told him that the landlord's daughter, Vasaya, had purchased an instant ticket and had asked Lalani to scan the ticket. When she scanned the ticket, there was a message to claim the ticket at the lottery. Frost then interviewed Vasaya, who confirmed that her father is a lottery retailer and owns a location in Jonesboro, Georgia. In his memorandum, Frost stated that Vasaya gave a very similar statement to that of Lalani and that "[b]ased on all facts gathered during the investigation there was nothing to support that anyone other than . . . Vasaya was the person who purchased the instant

3

ticket in question." Frost added that she "was honest about her father owning a retail location."

On April 5, 2016, Flanagan emailed the following message to Joseph Kim, Senior Vice-President and General Counsel for the GLC :

> On January 29, 2016 I called the Duluth district office to speak to Sannah Vasaya about the $7,500 a Week for Life ticket she claimed that afternoon. When I asked her a question, she did not provide an answer right away but instead talk to someone else, in another language, and then provide an answer. After I was done speaking with her, I reviewed the video of her in our Duluth lobby, during our conversation and noticed that she had been talking to someone on her cell phone.

In a letter dated May 24, 2016, Kim informed Vasaya that he had directed the GLC's Prize Validation Department to decline to pay the $7,500 a Week for Life ticket that she had submitted on January 29, 2016. In the letter, Kim stated

> For the reasons in this letter, we have determined that you were not the bona fide purchaser of the ticket as you claimed. . . . Specifically, when you submitted the ticket on January 29, 2016 at the GLC Duluth office, Mr. Darrin Flanagan with the GLC Prize Validation Department called you from GLC headquarters in Atlanta. . . . [I]t became readily apparent that you were not the bona fide purchaser of the ticket because you could not answer basic questions that a bona fide purchaser would know . . . such as where or when the ticket was purchased. When you could

not answer the questions, Mr. Flanagan noticed that you stayed on the call with Mr. Flanagan and got on a second phone call with some other person (which Mr. Flanagan confirmed by viewing the video feed from the Duluth office to the Atlanta office). Mr. Flanagan was able to both hear you talking to someone else asking for the answers to his questions; and Mr. Flanagan could see you on a second phone asking for the answers to his questions. After receiving the information from the person on the phone, you told Mr. Flanagan that you bought the ticket at the Corner Food Mart in Loganville, GA. . . . While Mr. Frost had no basis to think you were anything other than the actual purchaser based solely on his interview with you because you were able to tell Mr. Frost where and when the ticket was bought, Mr. Frost acknowledged that he did not know that you were unable to provide the information to Mr. Flanagan without calling someone for the information about where and when the ticket was purchased. Mr. Frost concurs that an actual purchaser of a ticket should not have to call a third party for information about where and when that ticket was purchased.

Vasaya sued the GLC in the Superior Court of Fulton County, alleging that it had wrongfully refused to issue the prize money to her.

During a deposition on September 15, 2017, Flanagan was shown a video of Vasaya and her mother at the GLC's Duluth office while Vasaya was on the telephone with Flanagan. Flanagan testified that in the video, he did not see Vasaya speaking on her cell phone while she was talking to him. Flanagan explained that in

5

his April 5 email to Kim, he was indicating that Vasaya was talking to a person who was on her cell phone, not that Vasaya was on her cell phone. Flanagan testified that the video shows that while he was on the telephone with Vasaya, her mother was on her cell phone twice, but Flanagan agreed that each time Vasaya's mother was on her cell phone, she walked away from Vasaya. Flanagan further testified that he only speaks English, and that he did not know whether Vasaya was asking for answers to his questions.

At her deposition, Vasaya testified that she purchased the lottery ticket at issue on January 29, 2016, at the Corner Food Mart in Loganville, Georgia. Lalani, who is Vasaya's aunt, confirmed at her deposition that Vasaya purchased the winning ticket, scratched it off while in the store, and asked Lalani to scan the ticket.

Following discovery, Vasaya moved for summary judgment on the ground that the GLC had breached its contract with her by failing to pay the award. After holding oral argument, the trial court granted Vasaya's motion for summary judgment. The trial court later awarded Vasaya attorney fees and expenses. The trial court entered its final order and judgment on December 26, 2018. The GLC timely filed an application for discretionary appeal, which we granted. This appeal followed.

1. The GLC argues that the superior court committed reversible error when it found that a lottery ticket is a written contract sufficient to waive sovereign immunity. We disagree. In *Georgia Lottery Corp. v. Patel*, 349 Ga. App. 529, 533-534 (826 SE2d 385) (2019) (physical precedent only), we held that a breach of contract claim based on the GLC's denial of a claim for a lottery prize was not barred by sovereign immunity because a lottery ticket is an express written contract. Even though *Patel* is not binding precedent, our analysis in that case applies here.

"The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Watts v. City of Dillard*, 294 Ga. App. 861, 862 (1) (670 SE2d 442) (2008) (citation and punctuation omitted). Sovereign immunity applies to the GLC. In *Kyle v. Ga. Lottery Corp.*, 290 Ga. 87, 88 (1) (718 SE2d 801) (2011), the Georgia Supreme Court held that the GLC was an instrumentality of the State and was therefore protected from suit from sovereign immunity. The Georgia Constitution, however, waives sovereign immunity in breach-of-contract claims based upon written contracts. *Layer v. Barrow County*, 297 Ga. 871, 871 (1) (778 SE2d 156) (2015); *see* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). The burden of

demonstrating a waiver of sovereign immunity rests with the person asserting it. See *Watts*, 294 Ga. App. at 863 (1).

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. "An offer and an acceptance are essential prerequisites to the creation of every kind of contract. Thus, the law requires that the parties consent to the formation of a contract. Until each has assented to all the terms, there is no binding contract[.]" *Southeast Grading, Inc. v. City of Atlanta*, 172 Ga. App. 798, 800 (2) (324 SE2d 776) (1984) (citations and punctuation omitted). "Assent to the terms of a contract may be given other than by signatures." *Cochran v. Eason*, 227 Ga. 316, 318 (1) (180 SE2d 702) (1971) (citations omitted).

The GLC issues written lottery tickets. By buying a lottery ticket, a lottery player accepts the GLC's offer of a chance to win a prize under the terms printed on the ticket. By issuing and selling the ticket, the GLC assents to the terms of the contract. Thus, the elements of offer, acceptance, and assent of both parties to the terms of the contract are present. See OCGA § 13-3-1; see also *Southeast Grading, Inc.*, 172 Ga. App. at 800 (2). The GLC has the ability to contract as required by

8

OCGA § 13-3-1. See OCGA § 50-27-9. The consideration for the contract, which is required by OCGA § 13-3-1, is the purchase price of the ticket. The terms of the contract between the holder of the ticket and the GLC are written on the ticket, including the ticket price, how to win a prize, and the process for claiming prizes. Thus, the subject matter of the contract, an essential element of a contract under OCGA § 13-3-1, is stated on the ticket. Consequently, a Georgia lottery ticket is a valid contract under Georgia law. Furthermore, a Georgia lottery ticket is an express written contract because the intention of the parties and the terms of the agreement are expressed in writing on the lottery ticket. See *Classic Restorations, Inc. v. Bean*, 155 Ga. App. 694, 699 (5) (a) (272 SE2d 557) (1980). Thus, the superior court did not err in finding a lottery ticket to be a written contract sufficient to waive sovereign immunity.

2. The GLC contends that the superior court erred by granting Vasaya's motion for summary judgment because there are outstanding issues of material fact. We disagree.

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

9

to a judgment as a matter of law." OCGA § 9-11-56 (c). "And because summary judgment is a matter of law, we review the issue de novo." *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 583 (1) (a) (748 SE2d 846) (2013) (citation omitted).

The GLC's only basis for denying Vasaya's claim is its contention that Vasaya did not purchase the ticket.[1] The GLC argues that by granting Vasaya's motion for summary judgment, the trial court erred by weighing Vasaya's assertion that she purchased the lottery ticket against Flanagan's testimony to the contrary and making a determination in Vasaya's favor. At his deposition, Flanagan testified that a rightful owner would know immediately when and where they purchased the ticket, and that Vasaya did not immediately answer his questions and repeated something after he would ask her a question. Flanagan conceded that Vasaya had not been on a second phone call with another person while she was on the phone with him, as stated in Kim's May 24 letter. Furthermore, although his April 5 email stated that Vasaya had been asking someone else questions in another language, Flanagan conceded at his deposition that he spoke only English and did not know whether Vasaya was asking for answers to his questions. Flanagan's conclusion that Vasaya was not the bona fide

---

[1] We note that Georgia law expressly allows a person who may lawfully purchase lottery tickets to make a gift of lottery tickets to another person. OCGA § 50-27-23 (a).

10

purchaser was based on speculation. Vasaya and Lalani both testified that Vasaya purchased the winning ticket. "Speculation that raises a mere conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." *Barbour-Amir v. Comcast of Georgia/Virginia, Inc.*, 332 Ga. App. 279, 283 (1) (772 SE2d 231) (2015) (citations and punctuation omitted). Consequently, Flanagan's testimony that Vasaya was not a bona fide purchaser is not sufficient to create a genuine dispute of a material fact.

3. The GLC also contends that the trial court erred in awarding attorney fees under OCGA § 13-6-11 at the summary judgment stage. We agree.

OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

Here, in addition to granting summary judgment to Vasaya, the trial court also granted her request for attorney fees pursuant to OCGA § 13-6-11. On appeal, the GLC argues that the trial court's award of attorney fees was erroneous because attorney fees under OCGA § 13-6-11 are a question for the jury. The GLC is correct.

11

[A]ttorney fees cannot be awarded by a trial court pursuant to OCGA § 13-6-11 at the summary-judgment stage of proceedings because the very language of the statute prevents a trial court from ever determining that a claimant is entitled to attorney fees as a matter of law. . . . [B]ecause both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, a trial court is not authorized to grant summary judgment in favor of a claimant therefor. And although a trial court is permitted to grant such fees when it sits as a trier of fact, it is not a trier of fact on a motion for summary judgment. Accordingly, the trial court here was without authority to grant attorney fees pursuant to OCGA § 13-6-11 on summary judgment[.]

*Sherman v. Dickey*, 322 Ga. App. 228, 233-234 (2) (744 SE2d 408) (2013) (footnotes and punctuation omitted). Consequently, we reverse the trial court's award of fees under OCGA § 13-6-11.

4. The GLC next contends that the superior court erred by awarding Vasaya prejudgment interest. We disagree. In Vasaya's complaint, she demanded "interest on the amount of the single cash payment that is due and owing[.]" In her amended complaint, Vasaya demanded "interest on the single cash payment[.]" In the statement of material undisputed facts and supporting theories that Vasaya filed with her motion for summary judgment, Vasaya stated that she was "entitled to judgment in her favor

12

for the lump sum payment plus interest and costs." The GLC argues that Vasaya's demand for interest is not sufficient to be considered a demand for prejudgment interest under OCGA § 7-4-15.

OCGA § 7-4-15 provides, in pertinent part: "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand." "Under this statute, prejudgment interest – which flows automatically from a liquidated demand – is to be awarded upon a judgment for a liquidated amount. Thus, as long as there is a demand for prejudgment interest prior to the entry of final judgment, a trial court should award it." *Crisler v. Haugabook*, 290 Ga. 863, 864 (725 SE2d 318) (2012). "The only requirement for a prejudgment interest award upon a liquidated damages claim is a demand." *Id.* (citation omitted). The GLC has not cited, and we have not found, any case requiring a plaintiff to use the word "prejudgment" in a demand for interest in order to recover prejudgment interest under OCGA § 7-4-15. In support of its argument that a general demand for interest is not sufficient to be considered a demand for prejudgment interest under OCGA § 7-4-15, the GLC cites *Holloway v. State Farm Fire & Cas. Co.*, 245 Ga. App. 319, 320 (537 SE2d 121) (2000). In that

13

case, we stated that even though a general prayer for relief was included in the complaint, the plaintiff did not make a demand for prejudgment interest until a later pleading. 245 Ga. App. at 320 (1) (a). However, in *Holloway*, there is no indication that the plaintiff made a demand for interest in his complaint or amended complaint. Therefore, *Holloway* does not support the State's argument that a demand for interest is not sufficient to be considered a demand for prejudgment interest. Consequently, the trial court did not err in awarding Vasaya prejudgment interest.

*Judgment affirmed in part and reversed in part. Barnes, P. J. concurs. McMillian, P. J., dissents.**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

A19A1625. GEORGIA LOTTERY CORPORATION v. VASAYA.

McMILLIAN, Presiding Judge, dissenting.

Because I believe that the trial court erred in finding that the scratch off lottery ticket that Vasaya presented is a written contract that waives GLC's sovereign immunity, I must respectfully dissent.

As I explained more fully in my dissent from the majority opinion in *Georgia Lottery Corp. v. Patel*, 349 Ga. App. 529 (826 SE2d 385) (2019) (physical precedent only), a scratch off lottery ticket is not an express written contract. Under Article I, Section II, Paragraph IX (e) of the Georgia Constitution, the State's sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." The Georgia Constitution further provides:

> The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). In determining what constitutes a written contract sufficient to waive sovereign immunity, we must be mindful of our Supreme Court's guidance:

> General rules of contract law that might otherwise support a claim for breach of contract damages between private parties . . . will not support a claim against the state or one of its agencies if the contract is not in writing so as to trigger the waiver of sovereign immunity.

*Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 82 (2) (786 SE2d 840) (2016).

Thus, a party may not recover for breach of contract against the State based on an implied contract, on a theory of quantum meruit, or by the parties' course of conduct even if a document exists supplying the material terms of the alleged contract. *RTT Assoc.*, 299 Ga. at 82-83 (2) (finding that "even if a contract with a state agency is formed by the parties' conduct, if it is not a written contract the state's sovereign immunity is not waived" and that a breach of contract action against the State cannot be based on multiple unsigned documents that do not establish the necessary terms of a contract). See also *Wilson v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. 413, 414 (2) (419 SE2d 916) (1992) (Board of Regents did not enter into a written contract based on various forms plaintiff signed before her operation); *Browning v. Rabun County Bd. of Commissioners*, 347 Ga. App. 719, 722-23 (820

2

SE2d 737) (2018) (summary of benefits was not a written contract between the parties where it was not signed by either party and does not show the assent of the parties to the contract); *Bd. of Regents of Univ. Sys. of Ga. v. Ruff*, 315 Ga. App. 452, 457 (2) (726 SE2d 451) (2012) (where none of the writings produced by the plaintiff were signed by a representative of the Board of Regents, plaintiff was unable to establish a written contract), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778, n.7 (784 SE2d 775) (2016).

Our legislature has statutorily defined a lottery ticket as "any tangible evidence issued by the lottery to provide participation in a lottery game," OCGA § 50-27-3 (24). Although the rules of the game are printed on the ticket and may be deemed contractual terms, this does not mean that the ticket is a written contract for sovereign immunity purposes as it is only evidence of Vasaya's participation in the lottery and is at most evidence of an implied contract. The lottery ticket is not signed by a representative of the GLC, nor are there any other documents that Vasaya has pointed to that fit within how our Supreme Court has described written contracts sufficient to waive sovereign immunity. See *Layer v. Barrow County*, 297 Ga. 871, 871-72 (1) (778 SE2d 156) (2015) (sovereign immunity will bar a lawsuit for damages upon quasi-contractual theories of liability in the absence of a written contract); *RTT*

3

*Assoc.,* 299 Ga. at 83 (2) ("The doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed.") (citation and punctuation omitted).

Accordingly, I would find that Vasaya's claims are barred by sovereign immunity and would reverse the trial court's grant of summary judgment to Vasaya.