In the Supreme Court of Georgia

Decided:     May 23, 2016

S15G1780.  GEORGIA DEPARTMENT OF LABOR v.
RTT ASSOCIATES,  INC.

BENHAM, Justice.

This case involves a written contract between a vendor and a state agency that contained form language stipulating that amendments had to be in writing and executed by the agency and the contractor.  The vendor asserts that the contract was extended by course of conduct as well as by certain internal writings created by the agency.  By the terms of Georgia's constitution, the state waives its sovereign immunity for breach of contract when it enters into a written contract.[1]  At issue is whether an agency's waiver of immunity from a breach of contract claim as a result of entering into a written contract remains intact in the event the contract is extended without a written document signed by both parties expressly amending the contract, as required by its terms.

---

[1]  Pursuant to Ga. Const. of 1983, Art. 1, Sec. II, Par. IX (c): "The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments or agencies."  See also OCGA §50-21-1 (a).

The record shows appellant Georgia Department of Labor (DOL) entered into the contract in question with appellee RTT Associates, Inc. (RTT) for the purpose of engaging RTT to develop certain computer software. A representative of both parties executed the written contract. The contract identified the beginning date to be March 1, 2012, and the expiration date, or "Date of Completion," to be June 30, 2012.[2] The maximum amount to be paid under the contract was shown to be $247,422.68, and RTT's performance was secured by a performance bond in this amount. As noted, the contract specified that amendments must be in writing and fully executed by both parties. The contract specified that time is of the essence with respect to the contractor's performance. It contained an integration clause stating that the contract represents the entire agreement between the parties and that the parties shall not rely upon representations not included in the contract. It also stated that the contractor's obligations under the contract survived the expiration or termination of the contract.

DOL made one progress payment to RTT for the work involved in the first

_____

[2] We note that June 30 marks the end of the state's fiscal year, and DOL asserts that its contracts typically expire at the end of a fiscal year for budgeting purposes.

2

of four milestones in the contract, along with an advance toward the second milestone payment even though DOL claims that work was never delivered. In order to accommodate a change in federal law that impacted the desired software design, DOL executed an internal project change request by which it sought and was granted authority to increase the cost of the contract by $12,000. The change request, approved on June 12, 2012, states it does not impact the contract schedule. An internal purchase order, dated July 17, 2012, was prepared to support this change to the contract, and the purchase order references a contract date of August 30, 2012. In response to another change in federal law, a second internal project change request involving a $7,000 change to the scope of the contract was submitted on September 14 and approved on September 17, 2012. Neither of these change request documents was executed by RTT and no evidence exists that shows RTT was provided a copy of these documents at any time prior to the filing of RTT's lawsuit. No written amendment to the contract was executed by either party to extend the expiration date of the contract or modify any other contract term. RTT admits it did not complete the required work on or before the executed contract's expiration date.

The record reflects that even after the contract's stated expiration date, the

3

parties continued to communicate and work together with respect to development and delivery of a workable software product that satisfied DOL's requirements. By letter dated April 3, 2013, however, DOL notified RTT that it was in breach of the contract for its failure to deliver a functional product that complied with the contract requirements, and that the contract was immediately terminated. Also on that date, DOL made a written claim against the performance bond. In a May 7, 2013, meeting between the parties' representatives, DOL informed RTT that it would not utilize RTT's software.

RTT filed suit against DOL seeking damages for, among other things, breach of contract. In its complaint, RTT asserted DOL improperly terminated the contract because it failed to give notice of a claim of default and an opportunity to cure default before termination, as required by the terms of the contract. After certain claims and counterclaims were disposed of by the trial court's orders, and after conducting an evidentiary hearing, the trial court granted DOL's motion for summary judgment on all remaining claims. The trial court concluded RTT had failed to carry its burden of proof that the contract had been extended or amended by a writing executed by both parties, as required by the terms of the contract. Instead, the trial court found that "[a]t best, the record

4

evidences [DOL's] willingness to not hold [RTT] to the delivery deadline contained in the written [c]ontract." Therefore, the trial court concluded, sovereign immunity was not waived, as required by constitutional and statutory provisions, beyond the required completion date of the contract.

RTT timely appealed, and the Court of Appeals reversed the grant of summary judgment to DOL, finding, inter alia, that evidence of the parties' course of conduct created a question of fact as to whether the parties waived or extended the required completion date as well as the provision that the contract could be amended only in writing. *RTT Associates, Inc. v. Georgia Dept. of Labor*, 333 Ga. App. 173, 178 (1) (775 SE2d 644) (2015). Consequently, the Court of Appeals held the trial court erred in concluding, as a matter of law, that RTT's claims were barred by the doctrine of sovereign immunity. Id. at 179 (1). This Court granted DOL's petition for writ of certiorari to examine whether the Court of Appeals erred by reversing the trial court's grant of summary judgment. For the reasons set forth below, we reverse the Court of Appeals and hold that the trial court's order should be affirmed.

To summarize, RTT failed to complete its contractual obligations before the contract expired. Even if the parties' conduct after the expiration of the

5

contract could be found to demonstrate an agreement between the parties to continue to perform under the original contract, as a matter of law neither that conduct nor the internal documents created by DOL after the contract expired establishes a written contract to do so. Without a written contract, the state's sovereign immunity from a contract action is not waived.

1. The Georgia Constitution addresses the waiver of the state's immunity from liability for breach of contract as follows:

> (c) The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies.
>
> ****
>
> (e) Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c) and (e). Accordingly, since the DOL is an agency of the state[3] it is immune from suit except as specifically waived in the constitution or by an act of the General Assembly. Pursuant to

---

[3] See OCGA § 34–2-1, creating the Department of Labor as an administrative agency of the state.

6

OCGA § 50-21-1 (a), the General Assembly has provided that sovereign immunity is waived in a contract action against a state agency "for the breach of any written contract . . . ."

The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it. *Bd. of Regents, etc. v. Barnes*, 322 Ga. App. 47, 49-50 (2) (743 SE2d 609) (2013) (addressing the claimant's duty to establish the existence of a written contract in order to claim waiver of sovereign immunity, and holding that an implied contract will not support a waiver under the sovereign immunity provisions of the Georgia Constitution); *Georgia Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 685 (1) (722 SE2d 403) (2012) (same). See also *Bd. of Regents, etc. v. Daniels*, 264 Ga. 328, 329 (446 SE2d 735) (1994) (addressing the claimant's duty in a tort action to demonstrate waiver of immunity through the state agency's purchase of liability insurance covering the claim). Whether sovereign immunity has been waived under the undisputed facts of this case is a question of law, and this Court's review is de novo. See *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014). For reasons more fully set forth below, we find RTT has failed to meet its burden of showing

7

waiver of sovereign immunity.

2. Citing, with one exception, cases involving contract disputes in which the state was not a party, the Court of Appeals ruled that contractual obligations may survive the end of a written contract; that parties may modify the terms of a written contract by mutual consent and without a writing; and that the contracting parties may waive a provision that the contract may be modified only in writing. See *RTT Associates*, supra, 333 Ga. App. at 177-178 (1). While private parties, however, may be able to modify and extend written contracts by manifesting their intent to do so even without a written agreement, the enforceability of a contract against the state is governed by the constitution and by statute. In order for sovereign immunity to be waived with respect to contract actions against the state, the contract must be in writing. The Court of Appeals erred in extending general common law rules of contract in a manner that creates contract liability against a state agency for an agreement that does not meet the in-writing requirement for waiver of sovereign immunity.

Even if, as the Court of Appeals concluded, DOL and RTT waived, through their course of conduct, the provision that the contract could be amended only in writing and similarly waived or extended the required

8

completion date, this conduct could not have waived DOL's sovereign immunity. In *Bd. of Regents, etc. v. Tyson*,[4] this Court held that even if a contract with a state agency is formed by the parties' conduct, if it is not a written contract the state's sovereign immunity is not waived. In the *Tyson* case, the Board of Regents was entitled to judgment in its favor on a breach of contract action that was not based upon a written contract but on multiple unsigned documents that did not establish the necessary terms of a contract. RTT seeks to distinguish *Tyson* on the ground that *Tyson* involved a claim where no written contract was ever formed between the parties. Here, an enforceable contract was formed and the only issue, according to RTT, is whether it was extended by course of conduct or by writings that, when construed together, create evidence of an intent to amend and extend the contract.

General rules of contract law that might otherwise support a claim for breach of contract damages between private parties, however, will not support a claim against the state or one of its agencies if the contract is not in writing so as to trigger the waiver of sovereign immunity. See *PMS Construction Co., Inc.*

---

[4] 261 Ga. 368, 369-370 (1) (404 SE2d 557) (1991).

*v. DeKalb County*, 243 Ga. 870 (257 SE2d 285) (1979). In *PMS Construction*, this Court held that a party may not recover for breach of contract from a county based upon an implied contract, nor upon a claim of quantum meruit for the value of services provided, because of the statutory requirement that a contract with a county must be in writing pursuant to what is now OCGA § 36-10-1 (requiring public works contracts with a county to be in writing and entered on the county's minutes). Id. at 872 (2). Similarly, we hold that general contract rules may not be applied to create a waiver of sovereign immunity where the contract is not in writing as required by the constitution and by OCGA § 50-21-1. "The doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed . . . ." *Bd. of Regents, etc. v. Barnes*, supra, 322 Ga. App. at 50 (2) (implied contract will not support a waiver of sovereign immunity). Regardless of the parties' course of conduct, that conduct was ineffective to waive sovereign immunity since waiver of sovereign immunity for a breach of contract action requires a written contract. This contract had expired before RTT fully performed under it. We note that all the conduct and internal documents relied upon by RTT came after the contract's expiration date, so that DOL's waiver of immunity had already

10

expired.

As noted, only one of the cases relied upon by the Court of Appeals, to support its conclusion that a contractual requirement that modifications must be in writing may be waived by course of conduct, involved a breach of contract claim against an entity with sovereign immunity, namely a county.[5] In *Handex of Florida, Inc. v. Chatham County*,[6] a party that entered into a construction contract with a Georgia county was sued by its subcontractor and then filed a third-party complaint against the county for breach of contract. Although summary judgment in favor of the county was upheld, in its opinion the Court of Appeals applied general rules of contract law and found the county waived the written modification requirement in its contract by the course of conduct between the parties. Even so, no liability for breach of contract was imposed against the county under the facts of the case. More importantly, the issue of sovereign immunity was not addressed in the opinion. To the extent, however, that the *Handex* case can be interpreted as creating a waiver of sovereign immunity for a breach of contract claim solely as a result of the parties' course

---

[5] A county shares the immunity of the state for purposes of the sovereign immunity doctrine. *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994).

[6] 268 Ga. App. 285 (602 SE2d 660) (2004).

11

of conduct, that case is disapproved.

RTT relies upon other Court of Appeals cases to support its assertion that a state agency may waive sovereign immunity by its waiver of certain contract terms. As illustrated below, these cases are either distinguishable or are hereby disapproved.

In *Dept. of Transportation v. Dalton Paving & Construction, Inc.*,[7] the Court of Appeals held that an issue of fact was created, thereby defeating the state agency's motion for directed verdict or motion for judgment notwithstanding the verdict, where evidence was presented that the state agency waived, by its conduct, certain contractual requirements.[8] This conclusion was based upon a summary statement that "a party to a contract may waive contractual provisions for his benefit," unsupported by any analysis or support for whether such general contract rules apply to create a waiver of sovereign

---

[7] 227 Ga. App. 207 (489 SE2d 329) (1997).

[8] In the *Dalton Paving* case, the DOT's written contract required that any alteration that materially increased or decreased the cost of performance must be in writing and executed by both parties, or else would require a written "force account" agreement signed by the state highway engineer and agreed to in writing by the contractor. Id. at 216 (4). The Court of Appeals determined that the evidence created a jury issue as to whether the DOT waived this express provision. Id. at 217.

immunity when the party is a state agency.[9]  In fact, as in the *Handex* case, the issue of sovereign immunity was not addressed.  Again, however, to the extent the *Dalton Paving* case can be interpreted as creating a waiver of sovereign immunity for a breach of contract claim as a result of the parties' course of conduct, that case is disapproved.

In *State Hwy. Dept. v Wright Contracting Co.*,[10] the Court of Appeals applied general contract principles to conclude that where the owner in a construction project orally orders extra work with notice that the contractor expects additional compensation, the owner thereby waives the contract's requirement of a written order for extra work and the contractor may recover compensation for the work performed.  Id. at 758-759 (1).  That case, however, was decided in 1963, before the common law doctrine of sovereign immunity was afforded constitutional status by a 1974 amendment to the state constitution authorizing the legislature to waive sovereign immunity.[11]  Previously, and at

---

[9]  Id. at 215-216.

[10]  107 Ga. App. 758 (131 SE2d 808) (1963).

[11]  See Ga. L. 1973, pp.1489-90, incorporated into the 1976 Georgia Constitution at Art. VI, Sec. 5, Para. I (empowering the General Assembly to create a state court of claims for the trial of such claims against state and local governments as the legislature might permit).  See the discussion of this constitutional amendment in *Gilbert v. Richardson*, 264 Ga., supra at n. 2 .

the time the *Wright Contracting* case was decided, the courts had authority to abrogate or modify the sovereign immunity doctrine as a product of the common law. See *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, supra, 294 Ga. at 596-597 (2) (reviewing the history of sovereign immunity in this state). Currently, the Constitution of 1983 reserves to the legislature the exclusive power to waive sovereign immunity. See Ga. Const. Art. I, Sec. II, Par. IX (e). "The plain and unambiguous text of [our current constitution] shows that only the General Assembly has the authority to waive the State's sovereign immunity." 294 Ga. at 599. While the Court of Appeals at the time of the *Wright Contracting* opinion had authority to apply common law contract principles in a manner that effectively waived sovereign immunity, the courts no longer have such authority.[12] Consequently, RTT's reliance on *Wright Contracting* for authority to establish that a state agency may waive sovereign immunity by its course of conduct is misplaced.[13]

---

[12] "Opinions of Georgia appellate courts dealing with the judicial application of sovereign immunity prior to the 1974 constitutional amendment are not applicable to claims against the State arising after the 1974 amendment because the 1974 amendment created an entirely new ball game with regard to sovereign immunity." (Citation and punctuation omitted.) *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, supra, 294 Ga. at 601.

[13] RTT also relies in its brief upon *Western Surety Co. v. Dept. of Transportation*, 326 Ga. App. 671 (757 SE2d 272) (2014), in which the Court of Appeals noted the common law proposition that a party to a contract may waive a contractual provision by its conduct, but went on to find no

In sum, the Court of Appeals erred when it applied common law principles regarding the ability of parties to modify or waive contract provisions by their conduct or manifest intent to the issue of whether DOL waived, by its conduct, its sovereign immunity from RTT's claims. Only the General Assembly, and not the courts, has authority to waive sovereign immunity. See *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, supra, 294 Ga. at 599 and cases cited therein.

3. It follows that the Court of Appeals also erred in concluding that an issue of fact remains to be determined with respect to whether certain actions and statements by DOL employees effectively extended the terms of the written contract, thereby defeating DOL's claim of sovereign immunity. In support of its conclusion that a jury could find sovereign immunity was waived by course of conduct, the Court of Appeals points to DOL's continued acceptance of new editions of the software RTT delivered after expiration of the completion date; to DOL's statement in its letter sent well after the expiration of the completion date notifying RTT that the contract was (only then) "terminated immediately"

---

waiver of the contract provision at issue. Given the constitutional mandate that only the General Assembly may waive sovereign immunity, reliance on this case for RTT's assertion that DOL waived sovereign immunity by its conduct is also misplaced and contrary to the law of this state.

and further stating the contract had been extended multiple times to allow RTT to complete and deliver a satisfactory product; and to DOL's correspondence to the surety company stating the same.[14]    Certain internal accounting documents were also prepared by DOL requesting additional disbursements of funds to RTT after the contract's expiration date.  Importantly, all these events, including DOL's preparation of internal disbursement requests, occurred after the contract had already expired.  These events could not have amended a contract that was no longer in existence.  At best, these events served to create a new agreement  between the parties whose former contract had expired.  But even if these events could be interpreted as demonstrating a mutual departure from the terms of the contract with intent to create a new agreement between the parties, these events did not create a new *written contract* and thus did not meet the constitutional or statutory requirements for waiving sovereign immunity with respect to a contract action.  Again, the application of general provisions of contract law cannot be applied by the courts to create a waiver of sovereign

---

[14] Although we find no issue of fact remains to be tried in this case because, as a matter of law, the agency's actions could not create a waiver of sovereign immunity, we nevertheless note that these actions, in any event, appear to be consistent with the contract's terms that the contractor's obligations survive the expiration of the contract.  As the trial court noted, DOL's actions simply demonstrate DOL continued to work with RTT toward the late fulfillment of the contract.  They do not, however, create an issue of fact with respect to whether DOL waived its sovereign immunity.

immunity by means other than by written contract.

In this case, the written contract specified a completion date on which the contract expired, and required that amendments to it must be in writing. To permit immunity to be waived by an unwritten extension of the contract created by the course of conduct of DOL employees would be to authorize a state agency, itself, to waive sovereign immunity, by means other than entering into a written contract. A state agency's statutory authority to enter into contracts does not trigger the consent of the General Assembly for that agency to be sued, ex contractu, unless it is a *written contract* as required by OCGA § 50-21-1. See Op. Atty. Gen. 66-261 (advising the Board of Regents that even though it has statutory authority to enter into contracts, it has no authority to enter into a contractual obligation to assume tort liability for a third party, under a hold harmless clause of a lease, that would waive that agency's sovereign immunity). See also Op. Atty. Gen. 80-67 (advising the Georgia Fire Academy that entering into an indemnity agreement for the tort liability of a third party would be ultra vires and void because it would be an unauthorized attempt to waive the state's sovereign immunity). Likewise, a state agency lacks the power to waive sovereign immunity for contract liability by an act other than the execution of

17

a written contract.

Even if the actions, statements, or conduct of DOL employees could be found by a trier of fact to have extended the RTT contract and waived the requirement that it could be amended only in writing, whether DOL waived sovereign immunity beyond the terms of the written contract is not an issue of fact; it is an issue of law. As a matter of law, sovereign immunity was not and could not be waived by DOL's actions that occurred after the date the written contract expired. Even the internal pay requests and purchase order prepared after the date the contract expired do not serve as evidence that would either create a contract sufficient to waive sovereign immunity pursuant to OCGA § 50-21-1 or serve to extend the original written contract that had expired because these documents are not executed by both parties and are not otherwise sufficient to create an enforceable contract. See *Bd. of Regents v. Tyson*, supra, 261 Ga. at (1); *Georgia Dept. of Community Health v. Data Inquiry*, LLC, supra, 313 Ga. App. at (1) (b). The same rule would apply to any admissions made by DOL employees that the contract had been extended, when the evidence shows any agreements to extend did not meet the written contract requirement set forth in the applicable statute and constitutional provision

relating to waiver of sovereign immunity. Consequently, the Court of Appeals erred in concluding that an issue of fact was created as to whether the actions, statements, or conduct of DOL employees could be found to have waived the agency's sovereign immunity.

The constitutional provision expressly reserving the power to waive sovereign immunity to the legislature "does not allow for exceptions" to be created by the courts. *Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, supra, 294 Ga. at 599-600. Thus, no exception to the rules regarding waiver of sovereign immunity may be created by the courts in this case based upon any reliance RTT may have placed upon the parties' continued communications regarding the incomplete software project after the expiration of the written contract. Any work that may have been performed after the contract expired was not performed pursuant to a written contract and cannot support a claim against DOL due to the bar of sovereign immunity. While this result may seem harsh, parties are presumed to know the law, and are required "at their peril" to ascertain the authority of a public officer with whom they are dealing. *City of Atlanta v. Black*, 265 Ga. 425, 426 (457 SE2d 551) (1995) (despite the presumptive plenary authority of private sector attorneys to

negotiate settlements between parties, plaintiffs in an action against the City of Atlanta were presumed to know that the authority conferred on the city attorney to enter into a monetary settlement of their claim was expressly limited by city ordinance).

"[A] fundamental purpose of sovereign immunity is the protection of state funds." *Georgia Dept. of Corrections v. Couch*, 295 Ga. 469, 480 (2) (b) (759 SE2d 804) (2014). It follows that one of the purposes of the constitution's requirement that contracts must be in writing in order to invoke the state's waiver of sovereign immunity is to protect the state from exposure to unanticipated damages. As DOL asserts, to permit agency employees to create open-ended pledges of the state's credit that cannot be determined by examination or audit of written agency contracts would potentially violate the state's budgeting process[15] or even the constitutional provisions regarding the state's incurring debt.[16] For this reason, also, the Court of Appeal's opinion must be reversed and the trial court's order affirmed.

Judgment reversed. All the Justices concur.

---

[15] See the Budget Act, OCGA § 45-12-71 et seq.

[16] See Ga. Const. Art. VII, Sec. IV, Para. VIII. See also Op. Atty. Gen. 74-115 (advising the State Auditor that even a state agency's written contract incurring a fiscal obligation dependent upon future appropriations or the continued existence of other sources of state funds is invalid because it is beyond the agency's authority to pledge the state's credit).