**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 14, 2023**

# In the Court of Appeals of Georgia

A22A1542. TIBBETTS v. WORTH COUNTY SCHOOL DISTRICT et al.

MCFADDEN, Presiding Judge.

The trial court granted summary judgment to the Worth County School District[1] in this action for breach of an employment agreement, on the ground that the plaintiff, teacher John R. Tibbetts, failed to show a waiver of sovereign immunity. Tibbetts argues on appeal that this was error because his contract was renewed by operation of law under OCGA § 20-2-211 (b) and, consequently, the ex contractu clause of our state constitution, Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c), waives

---

[1] In the caption of his complaint, Tibbetts also listed Hubert Souter, chairman of the Worth County Board of Education, as a defendant. Tibbetts represented to the trial court that he included Souter in the caption erroneously and that he was not asserting any claims against Souter. So we do not discuss Souter further in this opinion.

sovereign immunity in this action. Because we agree that Tibbetts' contract was renewed by operation of law and was subject to the ex contractu clause, we find that the trial court erred in granting summary judgment to the district on sovereign immunity grounds. So we reverse.

1. *Facts and procedural history.*

"We apply a de novo standard of review to an appeal from the grant of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in favor of the opponent of summary judgment." *Wentworth v. Eckerd Corp.*, 248 Ga. App. 94 (545 SE2d 647) (2001).

So viewed, the record shows that Tibbetts began working as a teacher for the district during the 2015-2016 school year. On March 21, 2019, the Worth County Board of Education voted to extend to Tibbetts a contract for the 2019-2020 school year.

On March 31, 2019, the District's human resources manager sent Tibbetts an email stating that his renewal contract was available on the employee portal and that, to accept the contract, Tibbetts was required to sign and return it by April 15, 2019. That contract arguably departed from the statutory mandate of OCGA § 20-2-211 (b) in that it contained a blank for Tibbetts' social security number and did not include

2

a specific salary. Instead, it merely referenced a salary schedule because salary schedules had not yet been set for the upcoming school year. The salary schedule was not approved until June 2019.

Tibbetts attempted to sign and return the contract via the employee portal on the April 15 deadline set by the District. The District did not receive this attempted acceptance. On May 1, the human resources manager sent Tibbetts a certified letter that she had not received an acceptance of his contract. But she did not, by May 15, send him a notice that the District intended not to renew his contract, a necessary step to avoid renewing an incumbent teacher's contract by operation of law under OCGA § 20-2-211 (b), discussed below. Instead, after Tibbetts informed her that he believed he had accepted the contract, the human resources manager tried to find his acceptance, reviewing documents in the online portal and contacting the company that manages the software. Tibbetts and the human resources manager also corresponded by email several times.

On May 29, Tibbetts saw that his contract was still open on the employee portal, and he electronically signed the contract on that day. The District refused to honor the contract, operating under its belief that Tibbetts had not met the April 15 deadline for accepting it.

Tibbetts brought a breach of contract action against the District, alleging that the contract the District offered him did not comply with statutory requirements because it was missing his social security number and salary, and that under OCGA § 20-2-211 (b) his employment contract was renewed by operation of law.

The District moved for summary judgment, arguing that sovereign immunity barred Tibbetts' claim. The trial court agreed, holding that there was no written contract between the parties that would waive sovereign immunity. Among other things, the trial court found that "OCGA § 20-2-211 (b) does not clearly indicate a renewed contract by operation of law and does not provide a basis for Mr. Tibbetts to establish a clear waiver of sovereign immunity."

Tibbetts appeals. We agree that his contract was renewed by operation of law. So we do not reach the issues arising from the blanks in the contract tendered by the district. And we reverse.

2. *Sovereign immunity.*

The doctrine of sovereign immunity, which extends to county-wide school districts, see *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294 (454 SE2d 149) (1995), "bars any suit against the [s]tate to which it has not given its consent, including suits against state departments, agencies, and officers in their official

capacities. . . . If the consent of the [s]tate is to be found, it must be found in the constitution itself or the statutory law." *Lathrop v. Deal*, 301 Ga. 408, 444 (IV) (801 SE2d 867) (2017).

Consent to suits against the state for the breach of written contracts is found in the ex contractu clause of our state constitution, which provides: "The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereinafter entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). Tibbetts argues that this ex contractu clause waives sovereign immunity in his action for breach of an employment contract with the district.

We agree. As detailed below, we conclude that Tibbetts' prior written contract with the District was renewed by operation of law under OCGA § 20-2-211 (b) and that the renewed contract remained a contract in writing.

3. *Renewal by operation of law.*

The plain language of the controlling statute in this case, OCGA § 20-2-211 (b), provides that teacher employment contracts are automatically renewed unless, by specified dates, either the district or the teacher notifies the other of an intent not to renew. It requires a local governing board such as the District to, by May 15, either

tender to the teacher a new contract for the ensuing school year or notify the teacher in writing of the intention not to renew the teacher's contract. OCGA § 20-2-211 (b). It specifies that

> [s]uch contracts when tendered to each teacher or other professional employee shall be complete in all terms and conditions of the contract, including the amount of compensation to be paid to such teacher or other professional employee during the ensuing school year, and shall not contain blanks or leave any terms and conditions of the contract open.

Id. It then provides for automatic renewal:

> When such notice of intended termination has not been given by May 15, the employment of such teacher or other certificated professional employee shall be continued for the ensuing school year unless the teacher or certificated professional employee elects not to accept such employment by notifying the local governing board or executive officer in writing not later than June 1.

Id.

The District did not give Tibbetts a written notice by May 15 that it did not intend to renew Tibbetts' contract. Instead, the District made an offer to Tibbetts that did not meet the statutory requirement that it "includ[e] the amount of compensation to be paid to [him] during the *ensuing* school year[.]" OCGA § 20-2-211 (b)

6

(emphasis supplied). Instead the offer referenced a salary schedule. Although the District argues this reference was sufficient because it referenced the schedule in place at that time, that schedule pertained to the prior school year, not the ensuing school year.

In addition, the District's nonconforming offer to Tibbetts had to be affirmatively accepted in a particular way by an earlier deadline. OCGA § 20-2-211 (b) does not prohibit districts from making offers at other times of the year that do not conform to OCGA § 20-2-211 (b). But it does prohibit a district from using a nonconforming offer to displace the procedure the statute mandates — in particular, to defeat its automatic renewal provision.

And Tibbetts did not notify the District in writing by June 1 that he was electing not to accept continued employment. Instead, he notified the District before that deadline that he wanted his employment with the District to continue. So under the plain language of OCGA § 20-2-211 (b), Tibbetts' employment with the District was "continued for the ensuing school year. . . ."

4. *Writing.*

That continued employment was under a written contract. The subsection immediately preceding the one providing for automatic renewals directs that all

7

teachers' employment contracts must be in writing. It states: "Employment contracts of teachers, principals, and other certificated professional personnel shall be in writing, and such contracts shall be signed in duplicate by such personnel on their own behalf and by the executive officer of the local unit of administration on behalf of its governing board." OCGA § 20-2-211 (a).

To hold that contracts renewed by operation of law under OCGA § 20-2-211 (b) are not contracts in writing as required by OCGA § 20-2-211 (a) would be to declare the statute at war with itself. We should not do that. "The provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012) (discussing the "harmonious-reading canon"). See *State v. Hudson*, 303 Ga. 348, 353 (3) n. 5 (812 SE2d 270) (2018) (citing that canon).

We must follow "the literal language of [a] statute unless it produces contradiction, absurdity, or such an inconvenience as to ensure that the legislature meant something else." *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (citation and punctuation omitted). The literal language of OCGA § 20-2-211 requires *all* teachers to have written employment contracts, OCGA § 20-2-211 (a), and it provides a means for continuing a teacher's employment by operation of

8

law when the teacher does not accept a new written contract within a specified deadline. OCGA § 20-2-211 (b). We need not, and consequently should not, read the statute to provide that the contracts it renews by operation of law violate its requirement that contracts be in writing.

The automatic contract renewal procedure of OCGA § 20-2-211 (b) "contemplates continuous employment under the *same* contract of employment." *Oates v. Coffee County Bd. of Educ.*, 198 Ga. App. 77, 79 (400 SE2d 355) (1990) (emphasis added). In other words, if a teacher's contract is renewed by operation of law under OCGA § 20-2-211 (b), the teacher remains employed under the same contract as before — a written contract.

The district cites *Ga. Dept. of Labor v. RTT Assoc.*, 299 Ga. 78 (786 SE2d 840) (2016), for the proposition that a written contract subject to the ex contractu waiver of sovereign immunity cannot "arise from a previous written contract that has been extended without a formal, written amendment to it[.]" But that decision is inapposite. It does not construe OCGA § 20-2-211 (b) at all, nor does it concern the renewal of a teacher's contract by operation of law. Instead it concerns the purported extension of an expired contract through the actions of the parties to that contract. *Ga. Dept. of Labor*, 299 Ga. at 81-82 (2). See generally *Nebo Ventures v. Nova Pro Risk Solutions*,

9

324 Ga. App. 836, 845-846 (4) (752 SE2d 18) (2013) (extension of a contract and renewal of a contract are different things).

The General Assembly can abridge the right to contract, see *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 854 (2) (b) (797 SE2d 814) (2017), and it did so here. That abridgement has resulted in the renewal of a written contract. So sovereign immunity has been waived, and Tibbetts is entitled to sue for breach.

*Judgment reversed. Land, J., concurs. Gobeil, J., dissents.*

A22A1542. TIBBETTS v. WORTH COUNTY SCHOOL
DISTRICT et al.

GOBEIL, Judge, dissenting.

I respectfully dissent. Pretermitting whether the District's offered contract complied with OCGA § 20-2-211 (b) and whether Tibbetts's employment was renewed by operation of law, I do not believe that such renewal of his employment would qualify as a contract in writing sufficient to implicate the ex contractu waiver of the District's sovereign immunity.

As the party seeking to benefit from the waiver of sovereign immunity in this case, Tibbetts "bears the burden of proving such waiver." *Ga. Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 685 (1) (722 SE2d 403) (2012) (citation and punctuation omitted). Thus, in order to overcome the District's assertion of sovereign immunity using the ex contractu exception, "[Tibbetts] has the burden of showing that the contract sought to be enforced is in writing and contains all of the terms necessary to constitute a valid contract." And here, although Tibbetts may be

entitled to continuing employment, he failed to show a written contract including all necessary terms that was executed by the parties.[1]

The statute states that a teacher's "employment" shall be renewed, not the teacher's "employment contract." And in any event, the "renewal" of a contract is considered "another contract" or a "new paper" as described in *Nebo Ventures, LLC*, 324 Ga. App. at 845-846 (4). Accordingly, this new agreement that was created by operation of law is distinct from the prior contract between the parties, is not in writing, and thus does not implicate the ex contractu waiver of sovereign immunity.[2] See *Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 82-85 (2) (786 SE2d 840) (2016) (contract between state agency and private corporation ended on an expiration date stated in the written contract; although the parties' behavior in continuing to operate under the agreement after the expiration date may have created an implied

---

[1] Indeed, Tibbetts failed to accept the written contract extended to him under its own terms, and his acceptance of the offer after its deadline constituted at most a counter offer that was not accepted by the District. See *Achour v. Belk & Co.*, 148 Ga. App. 306, 307 (251 SE2d 157) (1978) ("When acceptance is required by the contract to be received within a stated time, there is no contract when not so received [u]nless the acceptance became a counter-offer accepted by the offeror.").

[2] In fact, if Tibbetts is found to be employed under the same written contract as before, then he would be teaching for another year without receiving the benefit of a year of creditable service towards his salary scale. (And, to change the terms of the contract would require a new writing, which is not present here.)

2

contract, such implied contract "[was] not a written contract the state's sovereign immunity is not waived."); see also *Liberty County School Dist. v. Halliburton*, 328 Ga. App. 422, 426-428 (3) (762 SE2d 138) (2014) (former school principal was seeking reinstatement under a renewed contract after school board voted to not renew her contract; her claim that the decision to non-renew was discriminatory was not grounded in a written contract sufficient to waive sovereign immunity under ex contractu exception), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778 n. 7 (784 SE2d 775) (2016).

The Majority relies upon the *Oates* case for the proposition that OCGA § 20-2-211 (b) "contemplates continuous employment under the same contract of employment." However, in that case, sovereign immunity was not at issue. Indeed, the plaintiff in *Oates* proceeded first to the local school board, appealed the decision to the State Board of Education, and then appealed to the Superior Court as contemplated in OCGA § 20-2-1160 (a), the statute that explicitly waives sovereign immunity for school boards for "any matter of local controversy in reference to the construction or administration of the school law[.]" *Oates*, 198 Ga. App. at 78. Accordingly, I do not agree that *Oates* answers the question presented here, and there is no precedent finding a waiver of sovereign immunity in the context we now

3

consider. "The doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed, and an implied contract will not support a waiver of immunity under the provisions of the Georgia Constitution." *Bd. of Regents of Univ. Sys. of Georgia v. Barnes*, 322 Ga. App. 47, 50 (743 SE2d 609) (2013). In summary, I would find that the agreement between the District and Tibbetts constitutes at most an implied contract, and thus I would affirm the trial court's order.