**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 30, 2023**

# In the Court of Appeals of Georgia

A23A0160. JUSTICE v. GEORGIA DEPARTMENT OF PUBLIC SAFETY.

DOYLE, Presiding Judge.

This appeal arises from the trial court's dismissal on the basis of sovereign immunity of Richard Andrew Justice's claim for breach of contract against the Georgia Department of Public Safety ("DPS"), which claim was predicated on the failure of DPS to pay him overtime under incorporated provisions of the Fair Labor Standards Act ("FLSA"), 21 USC § 201 et seq. Justice appeals the dismissal, arguing that the trial court erred by finding that certain documents exchanged by the parties did not constitute a written contract to establish that DPS had waived sovereign immunity. We reverse, for the reasons that follow.

"We review de novo a trial court's grant of a motion to dismiss on sovereign immunity grounds. However, factual findings by the trial court . . . are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity."[1]

The amended complaint alleged that Justice and 400 similarly situated plaintiffs who had been hired as state troopers with the Georgia State Patrol ("GSP")[2] and who were required to attend GSP trooper school had been underpaid approximately $4,782,848 in wages for overtime hours worked during trooper school pursuant to written contracts incorporating overtime provisions of the FLSA between 2014-2020. The complaint alleged that DPS had agreed in a written contract with Justice to comply with the FLSA regarding overtime pay worked by Justice.

DPS answered and moved to dismiss the complaint on the ground that the State had not waived sovereign immunity as to the claim. Justice responded to the motion to dismiss, arguing that the offer of employment, his acceptance thereof, and certain

---

[1] (Citations and punctuation omitted.) *James v. Ga. Dept. of Pub. Safety*, 337 Ga. App. 864, 865 (1) (789 SE2d 236) (2016), quoting *Loehle v. Ga. Dept. of Pub. Safety*, 334 Ga. App. 836, 836-837 (780 SE2d 469) (2015); *Pelham v. Bd. of Regents of the Univ. System of Ga.*, 321 Ga. App. 791 (743 SE2d 469) (2013).

[2] It is undisputed that GSP is an arm of DPS.

2

contemporaneously executed documents including the FLSA notifications provided by DPS constituted a written contract such that the trial court should find that the State had waived sovereign immunity for the purposes of his claim.

After limited discovery was allowed by the trial court, Justice filed a motion for summary judgment and associated documents that he claimed constituted a written contract between himself and DPS. First is a copy of a December 12, 2018 email from Diana Stephens, the Human Resources Employment Manager for DPS that stated, "Please see the attached PDF File for your final offer of employment for the Trooper position in the 106th Trooper school. Please email me back as receipt and confirmation of your acceptance of this final offer." Justice also filed a copy of the letter that was attached to the Stephens email signed on behalf of DPS by Kate Mayer, Director of Human Resources, which read:

> Congratulations! This letter serves as a final offer of employment as a Trooper Cadet[] and is your invitation to participate in the . . . GSP-[]) 106th Trooper School effective January 6, 2019. Your salary will be $36,110[] annually.
>
> You will receive follow up information within the next few weeks regarding report time and new hire information.

Again, you are congratulated for being selected to begin the final phase of becoming a [GSP] Trooper. Your successful completion of all the requirements of the Cadet Training Program is essential to continuing in Trooper School and ultimately graduating as a [GSP] Trooper. *This offer is contingent upon POST approval of your law enforcement application.*

As a reminder, you will be given a PT test on the beginning date of the GSP 106th Trooper School. Your failure to pass this PT test will result in your immediate dismissal from the GSP 106th Trooper School.

lf you have questions regarding this correspondence, please call Diana Stephens at [redacted]. I thank you for your continued interest in employment with the Georgia [DPS] and wish you well as you begin Trooper School.[3]

Also attached was a copy of an email from Justice's email address responding to Stephens's email from the afternoon of December 12, 2018, which stated, "I accept this offer. Thanks so much[,]" and response from Stephens stating, "Thank you and good luck with all, Diana."

Justice averred that on December 16, 2018, he signed additional documents provided to him by DPS, including (1) DPS's Policy Acknowledgment Form, which

_____

[3] (Emphasis in original.)

4

acknowledged receipt and understanding of Policy Number 5.13, overtime hours; (2)

DPS's Understanding Use of FLSA Compensatory Time (Sworn) form, stating that

> I, Richard Justice, do hereby acknowledge that as part of the terms and conditions of my employment with [DPS] (hereinafter referred to as my employer), I understand that I may be required to work more than one hundred seventy one (171) hours in a 28 day work period. I further understand that, in lieu of overtime compensation, I will receive compensatory time off at the rate of one and one-half hours for each hour of employment for which the [FLSA] requires overtime compensation;

and DPS's Understanding Use of FLSA Compensatory Time (Non-Sworn) form,

stating that

> I, Richard Justice, do hereby acknowledge that as part of the terms and conditions of my employment with [DPS] . . . , I understand that I may be required to work more than forty (40) hours in a work week. I further understand that, in lieu of overtime compensation, I will receive compensatory time off at the rate of one and one-half hours for each hour of employment for which the [FLSA] requires overtime compensation.

In his complaint, Justice maintained that he was a "non-sworn" employee during trooper school, which is the time during which he claimed that DPS failed to

compensate him according to the terms agreed in the FLSA compensatory time acknowledgment.

Following a hearing on the motion to dismiss,[4] the trial court issued an order prepared by the State, which found that the documents at issue did not constitute a written contract, and therefore, DPS and the State had not waived sovereign immunity as to Justice's claim.

In his single enumeration of error, Justice argues that the trial court erred by finding that the documents as listed above do not constitute a written contract for purposes of waiving sovereign immunity. We agree.

1. *FLSA background.*

The FLSA

was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees. FLSA rights cannot be abridged by contract

---

[4] The trial court considered the documents filed by Justice but it did not address his motion for summary judgment.

6

or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.

There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.

The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.[5]

For state employees, a state and its agencies enjoy immunity from suit, and specifically, the United States Supreme Court has explained that private rights of action under the FLSA are not available for this class of employees unless their state

---

[5] (Citations and punctuation omitted.) *Lynn's Food Stores, Inc. v. United States*, 679 F2d 1350, 1352-1353 (11th Cir. 1982).

has consented to such private suits.[6] The parties have cited no law establishing that Georgia is among the states that have consented to private suits by state employees against state employers for alleged FLSA violations.

2. *Ex-contractu waiver of sovereign immunity.*

Despite the fact that private citizens are precluded from bringing private FLSA claims against state actors, Georgia has waived sovereign immunity "as to any action ex contractu for the breach of any written contract . . . entered into by the [S]tate or its departments and agencies."[7] We agree that if Justice establishes that he has a written contract with DPS incorporating overtime provisions of the FLSA into his terms of employment, he can pursue such a claim. The State is free to contract, and

---

[6] See *Alden v. Maine*, 527 U. S. 706, 712, 754 (II) (B) (4) (119 SCt 2240, 144 LE2d 636) (1999) ("We hold that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts. We decide as well that the State of Maine has not consented to suits for overtime pay and liquidated damages under the FLSA."). See also *Rodriguez v. Puerto Rico Fed. Affairs Admin.*, 435 F3d 378, 380 (I) (DC Cir 2006) (explaining that [*Seminole Tribe of Florida v. Florida*, 517 U. S. 44 (116 SCt 1114, 134 LE2d 252) (1996),] and *Alden* effectively invalidated the FLSA's private right of action as applied against state agencies). Suits by the United States against an individual state for violations of the FLSA are not barred by sovereign immunity. See *Marshall v. A&M Consolidated Independent School Dist.*, 605 F2d 186, 188-189 (II) (5th Cir. 1979).

[7] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). See also OCGA § 50-21-1 (a).

such a contract would not constitute a "blanket waiver of sovereign immunity for FLSA claims" as DPS argues, rather, it would simply be a separate avenue available for the plaintiff.[8]

3. *Existence of a written contract.*

Justice argues that the December 12 emails between him and DPS leading to his hire combined with the additional employment documents he signed on December 16, constitute a written contract or contracts such that the State has waived sovereign immunity as to his claim of breach of contract for overtime pay consistent with the FLSA while he was at trooper school.

"A valid written contract may be formed when there are multiple, signed, contemporaneous agreements between the parties which demonstrate their intent to enter into a binding contract and the individual documents, considered together, include all of the necessary terms of a contract."[9]

---

[8] Cf. *Willis v. City of Atlanta*, 265 Ga. App. 640, 642 (2) (595 SE2d 339) (2004) (explaining that although a municipal employee's claim referred to the FLSA, it sounded in contract); *Avery v. City of Talladega, Ala.*, 24 F3d 1337, 1347-1348 (II) (E) (11th Cir. 1994) (persuasive authority) (allowing state-law breach of contract claim to proceed when allegation of claim was that employment contract incorporated FLSA provisions).

[9] (Citation and punctuation omitted.) *Bd. of Regents &c. of Ga. v. Doe*, 278 Ga. App. 878, 881 (1) (a) (630 SE2d 85) (2006) (holding that a written contract

(a) DPS contends that because Justice was an at-will employee, he could not have an employment contract, and therefore no waiver of sovereign immunity occurred. We disagree. While it is true that an at-will employment contract will not have a term of employment included therein, this Court has held that "an at-will employment relationship can give rise to certain contractual rights."[10]

(b) DPS also argues that there is no written contract and the emails between DPS and Justice were insufficient to constitute a written contract. We disagree.

Recently, in *State of Ga. v. Fed. Defender Program, Inc.*,[11] the Supreme Court of Georgia determined that email exchanges between state agencies and other

---

containing "specific salary, benefits, starting date, and all other necessary terms of employment" existed between the parties such that sovereign immunity had been waived even though the necessary Board vote to instate the plaintiff had not occurred; the Court explained that the lack of affirmative vote was an issue of contract performance and not contract formation). See also *Ga. Lottery Corp. v. Patel*, 349 Ga. App. 529, 533-534 (c) (826 SE2d 385) (2019) (physical precedent only) (finding that lottery ticket constituted a written contract between the State and purchaser such that sovereign immunity was waived for breach of contract claim when the State refused to pay the ticket winnings), cert. denied *Ga. Lottery Corp. v. Patel*, Case No. S19C1018 (decided Nov. 4, 2019).

[10] (Citations and punctuation omitted.) *O'Connor v. Fulton County*, 302 Ga. 70, 71 (1) (805 SE2d 56) (2017), quoting *Shelnutt v. Mayor & Aldermen of the City of Savannah*, 333 Ga. App. 446, 450 (2) (776 SE2d 650) (2015); *Ellison v. DeKalb County*, 236 Ga. App. 185, 186 (1) (511 SE2d 284) (1999).

[11] 315 Ga. 319 (882 SE2d 257) (2022).

individuals can create written contracts for the purposes of sovereign immunity waiver under the contract exception.[12] Here, DPS transmitted its written offer with a start date and salary to Justice via email, and its agent instructed him to "email me back as receipt and confirmation of your acceptance of this final offer," indicating that DPS was consenting to conduct business electronically.[13] Justice responded that he accepted the offer, and although he did not manually type his name after this response, his name appeared in the "From" field of the email beside his email address that he had been using to correspond with DPS over the course of the application period, and this inclusion of his name is sufficient to constitute a signature for these purposes.[14] Moreover, there is no evidence to indicate that the email was sent by

---

[12] See id. at 329-330 (3) (a) ("[We] see no reason under general principles of contract law why a contract cannot be memorialized in an e-mail for purposes of determining whether the State has waived its sovereign immunity."). Compare *Bd. of Regents &c. of Ga. v. Winter*, 331 Ga. App. 528, 532 (2) (a) (771 SE2d 201) (2015), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778 n. 7 (784 SE2d 775) (2016).

[13] See *Fed. Defender Program, Inc.*, 315 Ga. at 330-333 (3) (b) (holding that the Georgia Uniform Electronic Transactions Act ("GUETA"), OCGA § 10-12-1 et seq., applies to state agencies if "'the context and surrounding circumstances, including the parties' conduct,' demonstrate that the parties 'agreed to conduct [the particular] transaction[ at issue] by electronic means'").

[14] See OCGA § 10-12-2 (8) (for purposes of GUETA, an "'Electronic signature' means an electronic sound, symbol, or process attached to or logically

11

anyone other than Justice. Four days later,[15] DPS presented to Justice its FLSA Compensatory Time sworn and non-sworn forms concerning the requirement that he work overtime that he then physically signed.

Based on the contemporaneously executed documents exchanged between Justice and DPS, both physical and electronic, we conclude that the parties entered into a contract for at-will employment that included certain FLSA provisions.[16] Thus,

_____

associated with a record and executed or adopted by a person with the intent to sign the record").

[15] This is sufficiently close in time to constitute a contemporaneous signing of documents to incorporate them all into one contract. Compare *Winter*, 331 Ga. App. at 532 (2) (b) (i) (explaining that "'[c]ontemporaneous' in this setting does not 'connote perfect or absolute coincidence in point of time' and has been held to mean 'reasonably contemporaneous,'" and holding that a two month interval between documents was not contemporaneous for purposes of finding they constituted portions of a complete written contract).

[16] Compare *Bd. of Regents &c. of Ga. v. Tyson*, 261 Ga. 368, 369-370 (1) (404 SE2d 557) (1991) (holding that the State had not waived sovereign immunity in a suit for patient-plaintiff's injuries caused by another patient and consent to treatment documents lacked consideration to create a written contract between the State and the plaintiff-patient for this purpose); *Patrick v. Bd. of Regents &c. of Ga.*, 358 Ga. App. 546, 548-549 (855 SE2d 746) (2021) (holding that admission letter referring to graduate handbooks did not establish intent to create contract based on content of the handbooks between student and State such that sovereign immunity was waived by a written contract); *Boyd v. Neal*, 350 Ga. App. 274, 277-279 (1) (828 SE2d 650) (2019) (holding that state health benefit plan did not create a contract between the covered employee and the State such that sovereign immunity was waived for changes made mid-year to the benefit structure); *Ga. Dept. of Labor v. RTT Assoc.,*

12

DPS waived sovereign immunity for Justice's breach of contract claim related to those agreements, and the trial court erred by finding otherwise.

*Judgment reversed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps fully concur in Divisions 1, 2, and 3(a), and specially concur in Division 3(b).*

---

*Inc.*, 299 Ga. 78, 82 (2) (786 SE2d 840) (2016) (holding that the State had not waived sovereign immunity to suit for compensation for additional work done by the appellee according to discussions with a state agency because original written contract period between the appellee and the agency had expired and new written contract had not been agreed upon); *Bd. of Regents &c. of Ga. v. Barnes*, 322 Ga. App. 47, 50 (2) (743 SE2d 609) (2013) (holding that copies of documents that were not signed by either party did not constitute a written contract for purposes of waiving sovereign immunity), overruled on other grounds by *Wolfe v. Bd. of Regents &c. of Ga.*, 300 Ga. 223, 232 (2) (d) (794 SE2d 85) (2016); *Bd. of Regents &c. of Ga. v. Ruff*, 315 Ga. App. 452, 456 (2) (726 SE2d 451) (2012) (holding that written refund policy and schedule included as part of the application form for a study abroad program did not constitute part of a written contract such that sovereign immunity was waived by the State regarding violation of the refund policy because none of the documents were signed by a representative of the state agency), overruled on other grounds by *Rivera*, 298 Ga. at 778 n. 7; *Ga. Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 686 (1) (a) (722 SE2d 403) (2012) (holding that sovereign immunity had not been waived despite work done in reliance on contract negotiations because the negotiations had not resulted in a written contract between the plaintiff and the State).

13

A23A0160.  JUSTICE v. GEORGIA DEPARTMENT OF PUBLIC

    SAFETY.


GOBEIL, Judge, concurring specially.

I concur fully to Divisions 1, 2, and 3 (a) of the majority's opinion. However, I write separately to concur specially to Division 3 (b) because as written, it might be construed to waive sovereign immunity more broadly than I believe is permitted under existing law.

The Georgia Constitution establishes the general rule that sovereign immunity extends to the state and all of its departments and agencies. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).  Further, it provides that this sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Id. One such waiver is the ex contractu waiver that is at issue in this case.[1] In determining the existence and scope of any waiver, it is critical to bear in mind that the party seeking the benefit from the waiver of sovereign immunity has the burden of proving the existence of a waiver. See, e.g., *James v. Ga. Dept. of Public Safety*, 337 Ga. App. 864, 865 (1), 867 (2) (789 SE2d 236) (2016). And, it is necessary to ensure that "the conditions and limitations of the statute that waives sovereign immunity [are] are strictly followed." *Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 83 (2) (786 SE2d 840) (2016) (citation and punctuation omitted).

---

[1] "The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). See also OCGA § 50-21-1 (a) ("The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract existing on April 12, 1982, or thereafter entered into by the state, departments and agencies of the state, and state authorities.").

Turning to the question presented in this case, though close, I ultimately agree with the majority that Justice proved the existence of a written contract (incorporating the applicable FLSA provisions) sufficient to waive DPS's sovereign immunity for Justice's breach of contract claim. First, as explained by the majority, documents exchanged through emails can amount to a written contract sufficient to waive sovereign immunity. Here, DPS extended an offer of employment to Justice via email on December 12, 2018, which he accepted that same day. What is less clear, however, is whether the additional documents provided by DPS and signed by Justice on December 16, including the relevant FLSA documents, are part of Justice's employment contract such that DPS waived sovereign immunity related to the content of those documents.

As relevant here, DPS's December 12 offer letter advised Justice that he would "receive follow up information within the next few weeks regarding report time and new hire information." Four days later, on December 16,[2] Justice signed additional documents provided to him by DPS, including (1) DPS's Policy Acknowledgment Form, (2) DPS's Understanding Use of FLSA Compensatory Time (Sworn) form, and

_____

[2] As explained in footnote 15 of the majority's opinion, DPS presented the FLSA documents to Justice sufficiently close in time to constitute a contemporaneous signing of documents to incorporate them all into one contract.

3

(3) DPS's Understanding Use of FLSA Compensatory Time (Non-Sworn) form. Significantly, the latter two documents explicitly required Justice to comply with certain FLSA compensatory time policies "as part of the terms and conditions of [his] employment with [DPS] (hereinafter referred to as [his] employer)[.]" This express language, combined with the forms' provision by DPS (following its reference to additional forthcoming documents in the December 12 email exchange) and signature by Justice, demonstrates an intent to be bound by both parties. See *State v. Fed. Defender Program, Inc.*, 315 Ga. 319, 344 (3) (f) (882 SE2d 257) (2022) ("A contract will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.") (citation and punctuation omitted).

By contrast, DPS's Policy Acknowledgment Form contained no such express language tying the document to the terms and conditions of Justice's employment. Rather, by signing this form, Justice simply acknowledged that it was his responsibility to read certain departmental policies within specified time periods after the start of his employment with DPS. Importantly, as outlined by our case law, routine handbooks, acknowledgment of policies, and compliance expectations, standing alone, do not amount to a written contract sufficient to waive sovereign

4

immunity. See, e.g., *Patrick v. Bd. of Regents of Univ. Sys. of Ga.*, 358 Ga. App. 546, 548-549 (855 SE2d 746) (2021) (graduate handbook, student handbook, and offer letter telling student to familiarize herself with the handbook and department regulations did not demonstrate an intent for the handbook to become a binding contract; at most, the parties' conduct demonstrated the existence of an implied contract, which is insufficient to waive sovereign immunity); *Browning v. Rabun County Bd. of Commissioners*, 347 Ga. App. 719, 722-723 (820 SE2d 737) (2018) (summary of benefits was not a written contract between the parties where it was not signed by either party and did not show the assent of the parties to the contract); *Wilson v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. 413, 414 (2) (419 SE2d 916) (1992) (finding the Board of Regents did not enter into a written contract based on the consent form and ambulatory surgery patient agreement that plaintiff signed before her operation).

In this case, however, DPS made a conscious decision to explicitly incorporate certain FLSA policies with respect to work hours (contained in the two Compensatory Time forms) into the terms and conditions of Justice's employment, and therefore, I agree that DPS waived sovereign immunity related to the content of those documents.

I am authorized to state that Senior Appellate Judge Herbert E. Phipps joins in this special concurrence.